# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MS. CHARLES CANTER, #426-177     *

         Plaintiff,          *

      v.                    *       Civil No.  GJH-17-908

STEPHEN T. MOYER, ET AL.       *

         Defendants.       *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
## OR, IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

Defendants, Secretary Stephen Moyer, Sharon Baucom, M.D., Randall S. Nero, Bruce Liller, Lauren Beitzel and Assistant Warden Jeff Nines, by their attorneys, Brian E. Frosh, Attorney General of Maryland, and Stephanie Lane-Weber, Assistant Attorney General, in support of their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, file this Memorandum of Law and state as follows:

## I.     Introduction.

Plaintiff, pro se, an inmate formerly housed at North Branch Correctional Institution (NBCI), has filed a complaint against the Defendants alleging that he has been denied adequate mental health and medical care concerning his purported gender dysphoria. For relief, Plaintiff seeks declaratory and injunctive relief, and compensatory and punitive damages.

II.     **Factual Background.**

Plaintiff has had an abundance of medical and mental health attention paid to him while in the Maryland Department of Public Safety and Correctional Services (DPSCS). Indeed, Plaintiff's complaint contains a multitude of such records. See ECF Doc. 1 and attachments thereto.

The Maryland Department of Public Safety and Correctional Services (DPSCS) provides medical care to inmates housed within its facilities through private health care contractors. Exhibit 1, Declaration of Sharon Baucom, M.D., DPSCS Director of Medical Services, at ¶2. To address the specific medical concerns of inmates with gender dysphoria, DPSCS has developed a protocol for evaluation and treatment of inmates with gender identity problems: OPS.131.0001 Identification, Treatment and Correctional Management of an Inmate Diagnosed with Gender Dysphoria. Exhibit 1 at ¶3; Exhibit 2, OPS.131.0001 Identification, Treatment and Correctional Management of an Inmate Diagnosed with Gender Dysphoria. A Regional Gender Disorder Committee conference was held at NBCI on April 28, 2017; Plaintiff was one of the subjects whose mental health status was considered at the meeting by DPSCS psychologists and mental health practitioners.  Exhibit 1 at ¶4. To better assess Plaintiff's mental health concerns, it was decided that Mr. Canter would be evaluated by Chris Kraft, Ph.D., a psychologist with Johns Hopkins Medicine and a specialist in gender identity problems. *Id.* Dr. Kraft is a Johns Hopkins Medical director of clinical services and an instructor in Psychiatry and

Behavioral Sciences.

http://www.hopkinsmedicine.org/profiles/results/directory/profile/0018125/chris-kraft.

Randall S.Nero, Ph.D., is the Director of Mental Health/Patuxent Institution, Office of Inmate Health Services, Department of Public Safety and Correctional Services. Exhibit 3, Declaration of Randall S. Nero. Charles Canter was seen by specialist Dr. Chris Kraft on July 18, 2017. Exhibit 3 at para. 3. Dr. Kraft asked the psychology staff to obtain as much community based information about Canter's treatment in the community and to inquire from his mother as to his developmental stages in order to determine Canter's diagnosis. *Id.* To date, no mental health professional has advised DPSCS that Canter has gender dysphoria. *Id.*

Both psychological and psychiatric treatment are available to inmates at NBCI. Exhibit 4, Declaration of Bruce A. Liller, at para. 2. If an inmate would like to obtain mental health treatment at NBCI, he may request it and mental health professionals will assess the inmate and address his concerns. *Id.* Further, appropriate medications may be prescribed or discontinued at the psychiatrist's direction. *Id.* At NBCI there is a safety net redundancy: along with the mental health staff, medical and correctional personnel may also refer an inmate for mental health services if it appears that an inmate may have need for such services. *Id.* Correctional personnel receive training about mental health issues and they are directed to seek mental health intervention for inmates when appropriate. *Id.*

Plaintiff was released from prison to parole on September 5, 2017. Exhibit 3 at para. 1.

None of the Defendants denied, delayed or hindered mental health care to Plaintiff. No facts are alleged against Secretary Moyer, Dr. Baucom is an administrator and provides no medical care to inmates, Exhibit 1 at para. 1, and the Exhibit 3 at para. 4, Exhibit 4 at para. 3, Exhibit 5, Declaration of Jeff Nines, at para. 4, Exhibit 6, Declaration of Lauren Beitzel, at para. 2.

## III.   <u>Standard of Review</u>.

### A.  Motion to Dismiss

When reviewing a complaint in the shadow of a Rule 12(b)(6) motion, a court must accept all well-pled allegations of the complaint as true and must construe the facts and reasonable inferences in the light most favorable to the plaintiff.  *Ibarra v. United States*, 120 F.3d 473 (4th Cir. 1997).  A motion to dismiss should be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The court, however, need not accept unsupported legal allegations, *Reveme v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), or conclusory factual allegations devoid of any reference to actual events.  *United Black Firefighters v. Hirst*, 604 F.2d 884 (4th Cir. 1979).

### B.  Summary Judgment

A motion for summary judgment may be granted if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The mere existence of some alleged factual dispute between the parties will not defeat a properly supported motion for summary judgment; there need to be no genuine issue of material fact.  *Anderson*, 477 U.S. at 242. A complete failure of proof concerning an essential element necessarily renders all other facts immaterial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence.  *Anderson*, 477 U.S. at 256.

In *Celotex*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the, "pleadings, depositions, answers to interrogatories, and admissions on file."  Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324.  However, there must be sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor.  If the evidence is merely colorable and is not sufficient, summary judgment may be granted.  *Anderson*, 477 U.S. at 249-50 (citations omitted).

IV.   <u>**Argument**</u>.

    A.   **There was no Denial of Psychological Care**

To state a claim for denial of medical care a prisoner must allege facts from which a trier of fact could find that the defendants' acts or failures to act amounted to deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). As in other Eighth Amendment contexts, there are two components to this test: an objective component, *i.e.*, serious medical need; and a subjective component, *i.e.*, deliberate indifference. *See, e.g., Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 104 (4th Cir. 1995). In other words, as the Fourth Circuit stated, "in order to establish a claim of deliberate indifference to medical need, the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

In determining the necessity of medical treatment it is the necessity of medical treatment, not its desirability, which is determinative. *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir. 1981).  Further, the plaintiff's disagreement with a prescribed course of treatment, or the failure to treat all medical problems to a prisoner's satisfaction, does not establish deliberate indifference and therefore does not state a claim under § 1983. *Peterson v. Davis*, 551 F. Supp. 137, 146 (D. Md. 1982) *aff'd* 729 F.2d 1453 (4th Cir. 1984).  There is no underlying distinction between the right to medical care for physical ills and its psychological and psychiatric counterpart. *Bowring v. Goodwin*, 551 F.2d 44,

47 (4th Cir. 1977); *accord Torraco v. Maloney*, 923 F.2d 231, 235 (1st Cir. 1991); *Inmates of Allegheny County Jail* v. Pierce, 612 F.2d 754, 762 (3rd Cir. 1979); *Partridge v. Two Unknown Police Officers of City of Houston, Tex*., 791 F.2d 1182, 1187 (5th Cir. 1986); *Clark-Murphy v. Foreback*, 439 F.3d 280, 291 (6th Cir. 2006); *Ramos v. Lamm*, 639 F.2d 559, 574 (10th Cir. 1980).   As a result, "[t]he right to [psychological or psychiatric] treatment is limited to that which may be provided … is one of medical necessity and not simply that which may be considered merely desirable." *Bowring* at 551 F.2d 47-48.  Here, as a DPSCS inmate Plaintiff has had access to psychological care. That Plaintiff had not been diagnosed with gender dysphoria means that he did not meet the criteria for the surgery he sought.  However, this disagreement with the care he has received is not tantamount to a showing that Plaintiff has suffered a denial of the protections of the Eighth Amendment's prohibition against cruel and unusual punishment.

### B.      No Liability Unless Personal Participation

In order for liability to exist under § 1983, there must be personal involvement by the defendant in the alleged violation. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994); *see also Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976).  For this reason, Defendants Secretary Moyer, Dr. Baucom  and Dr. Nero Warden should be dismissed from the suit.  There is no *respondeat superior* liability under §1983.  *Monell v. New York Dep't of Soc. Serv*., 436 U.S. 658, 691 (1978). Therefore, supervisory correctional officials can be held liable only for their own

personal wrongdoing or for supervisory actions that themselves violate constitutional norms.

To establish supervisory liability in a §1983 action in general, the Fourth Circuit has held that it must be shown:  (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994)(citations omitted).  *See also*, *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984), *cert. denied*, 470 U.S. 1035 (1985).  Because these defendants were not involved in the Plaintiff's complaints, they should be dismissedpost haste.

**C.    No Equtable Relief is Warrented since Plaintiff has been Released from prison.**

As with any other federal case, an actual controversy must exist in a § 1983 action at all times or the case must be dismissed as moot. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997)("To qualify as a case fit for federal court adjudication, an actual controversy must be extant at all stages of review....")[1]; *Steffel v. Thompson*,

---

[1] "It is the duty of counsel to bring to the federal tribunal's attention, 'without

415 U.S. 452, 459 n.10 (1974)("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."). *See also County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979).

Where only injunctive relief is requested, intervening events can render a case moot. *See, e.g., National Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 350 (D.C. Cir. 1997)(change in statute); *Tawwab v. Metz*, 554 F.2d 22, 23 (2d Cir. 1977)(change in policy); *Gross v. Pomerleau*, 465 F. Supp. 1167, 1174 (D.Md. 1979) ("Section 1983 actions seeking injunctive and/or declaratory relief have been declared moot when the practices, procedures, or regulations challenged were no longer in use."); *Stevenson v. Lanham*, 127 Md. App. 597, 625, 736 A.2d 363, 379 (1999)(action seeking declaratory and injunctive relief relating to power to feed inmate on hunger strike rendered moot by inmate's decision to begin eating).

In particular, the transfer or release of a prisoner ordinarily renders moot any claim for declaratory or injunctive relief relating to conditions at the original institution. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)(transfer to another facility mooted inmate's claims for injunctive relief); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n. 1 (4th Cir.1986) (transfer mooted inmate's request for declaratory and injunctive relief); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987). *See also Altizer v. Deeds*, 191 F.3d 540, 543

---

delay,' facts that may raise a question of mootness. *See Board of License Comm'rs of Tiverton v. Pastore*, 469 U.S. 238, 240 ... (1985) (*per curiam*)." *Arizonans for Official English v. Arizona*, 520 U.S. 69 at n.23.

9

n.6 (4th Cir.1999). Because Plaintiff is no longer within the physical custoday of DPSCS, all equitable relief should be denied.

### D.    Qualified Immunity

The Defendants assert that they are entitled summary judgment on the basis of qualified immunity as to all claims.  The allegations have established that they have not violated any clearly established constitutional right of which a reasonable public official should have known.  *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Anderson v. Creighton*, 483 U.S. 635 (1987).  Qualified immunity "is intended to allow public officials to act, with independence and without fear of consequences, where their actions do not implicated clearly established rights." *Pierson v. Ray*, 386 U.S. 547, 554 (1967).

Under the standard articulated in *Harlow v. Fitzgerald*, *supra*, and *Mitchell v. Forsyth*, 472 U.S. 511 (1985), the question of whether a government or public official is entitled to summary judgment based on qualified immunity generally turns on the "objective reasonableness of the action, assessed in light of the legal rules that were 'clearly established at the time the action was taken." *Harlow v. Fitzgerald*, 457 U.S. at 818.  Qualified immunity thus protects public officials not only from liability, but from the vexations of trial.  *See Mithcell v. Forsyth*, *supra*, at 526.  The Fourth Circuit stated: "[o]officials 'generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established rights of which a reasonable person would have known.'" *Turner v.* Dammon, supra, at 443 (quoting *Harlow v. Fitzgerald*, supra, at

818).  Given the status of the law, even if the Plaintiff has stated a claim, the Defendants' actions cannot be held to have violated "clearly established" legal rules.

## V.    Conclusion.

Defendants respectfully request this Court to dismiss the case or that summary judgment be entered in their favor.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland


_____/s/_____
STEPHANIE LANE-WEBER
Assistant Attorney General
Federal Bar No. 00023

St. Paul Plaza – 19th Floor
200 St. Paul Place
Baltimore, Maryland 21202
(410) 576-6340 (Telephone)
(41) 576-6880 (Telefax)
E-mail: Slaneweber@oag.state.md.us

Attorneys for Defendants

.