# Executive Directive



| Title: Identification, Treatment and Correctional Management of an Inmate Diagnosed with Gender Dysphoria | Executive Directive Number: **OPS.131.0001 Revised** |
|---|---|
| Related MD Statute/Regulations: Correctional Services Article, §2-103, Annotated Code of Maryland | Supersedes: OPS.131.0001 dated 08/15/16 |
| Related ACA Standards: 4-4305; 4-4347; 4-4350; 4-4397; 4-ALDF-4C-04; 4-ALDF-4C-05; 4-ALDF-4C-07; 4-ALDF-4C-27 | Responsible Authority: *Pat Goins Johnson* **Executive Director, Field Support Services** |
| Related MCCS Standards: N/A | Effective Date: September 26, 2016 Number of Pages: 12 |

**Stephen T. Moyer**
**Secretary**

**J. Michael Zeigler**
**Deputy Secretary**
**For Operations**

### .01   Purpose.

This directive establishes policy and procedures for the Department of Public Safety and Correctional Services (Department) related to identification, treatment and correctional management of an inmate with Gender Dysphoria in the custody of the Department.

### .02   Scope.

This directive applies to the Division of Correction, Division of Pretrial Detention and Services, and the Patuxent Institution and the inmates committed to the custody of those Department units.

### .03   Policy.

A. The Department shall diagnose, treat, and manage inmates diagnosed with Gender Dysphoria in a manner consistent with appropriate treatment, custody, and security standards in accordance with applicable law and policy.

B. The provisions established in this directive for identification, treatment and correctional management of a Gender Dysphoric inmate do not apply to an inmate who is not sentenced to the custody of the Department and who is being detained in a Department correctional facility pending an initial appearance before a court commissioner following arrest.

### .04   Definitions.

A. In this directive, the following terms have the meanings indicated.

B. Terms defined.

(1)   "Clinical Pharmacist D" means an individual with a doctorate in clinical pharmacology who specializes in determining the best medication to administer to a patient given the clinical

Exhibit 2                                                                    000001

**Executive Directive Number: OPS.131.0001**

condition and presentation of a patient and potential risks and contraindications related to medical issues or medication combination the patient may have.

(2) "Diagnostic and Statistics Manual of Mental Disorders Fifth Edition (DSM-5)" means a publication of the American Psychiatric Association (APA), which lists specific criteria that enable a clinician to establish a diagnosis of a mental disorder.

(3) "Director of Clinical Services" means the Department's Director of Clinical Services also known as Chief Medical Officer.

(4) "Director of Mental Health" means the Department's Director of Mental Health who is responsible for oversight of administration, management, supervision, and development of mental health programs and delivery of behavioral health services at Department correctional and detention facilities.

(5) "Gender Dysphoria" means a marked incompatibility between an individual's experienced or expressed gender and assigned gender causing significant distress or impairment in important areas of functioning, such as, school, work, social, and other similar areas.

(6) "Gender Dysphoria Consultant" means a licensed health care professional who has credentials, training, and documented experience in working with the Gender Dysphoria population, as well as with board certified psychiatrists, licensed psychologists, and licensed social workers who treat individuals with Gender Dysphoria.

(7) "Inmate" has the meaning stated in Correctional Services Article, §1-101, Annotated Code of Maryland

(8) "Managing Official" has the meaning stated in Correctional Services Article, §1-101, Annotated Code of Maryland.

(9) "Mental Health Clinician" means a treatment provider properly licensed as a psychiatrist, psychologist, clinical social worker, mental health counselor, certified nurse practitioner, and other professionals who by virtue of education, credentials, and experience are permitted by law to evaluate and care for the mental health needs of an individual.

## .05   Responsibility and Procedures.

A. A Department Regional Treatment Team shall:

(1) Consist of the following:

    (a) The Regional Director of Mental Health, or a designee, (Chair);

    (b) Regional Psychiatrist for the Mental Health Contractor;

    (c) Custody staff to consult on non-diagnostic issues on an as needed basis determined by the Chair;

Exhibit 2

**Executive Directive Number: OPS.131.0001**

      (d)    Regional Medical Director for the Medical Services Contractor; and

      (e)    Other support staff as required such as, a Clinical Pharmacist D and State-wide psychiatrist for the Mental Health Contractor;

(2)    Monitor mental health and medical therapy to ensure Gender Dysphoria assessment process integrity;

(3)    Review individualized treatment plans for Gender Dysphoric inmates to determine if the treatment recommendations related to the management of Gender Dysphoric inmates are appropriate and necessary;

(4)    Review and audit overall treatment of Gender Dysphoric inmates in the region on a quarterly basis;

(5)    Report to the Director of Mental Health, or a designee, as provided in this directive on an inmate who has been identified as Gender Dysphoric using an approved notification form;

(6)    Be available for clinical consultations and case discussions when requested by the Mental Health Clinicians assigned to work with Gender Dysphoric inmates;

(7)    Ensure that a Mental Health Clinician assigned to work with a Gender Dysphoric inmate attends annual training designed to treat Gender Dysphoria;

(8)    Meet at least quarterly or as necessary;

(9)    Facilitate consultation with the Gender Dysphoria Consultant when determined to be necessary; and

(10)  When a Gender Dysphoric inmate is receiving other services, such as substance abuse or hormonal therapy, if determined appropriate, include those service providers in the Regional Treatment Team process to ensure integrated and consistent treatment is provided.

B.  Provisional Diagnosis of Gender Dysphoria.

(1)    If at any time an inmate self-identifies criteria for Gender Dysphoria or is referred by medical staff as possibly having Gender Dysphoria, a Mental Health Clinician assigned to the inmate shall evaluate the inmate, based upon a face-to-face evaluation and a review of available inmate medical and mental health history, to determine if the inmate meets the criteria for a provisional diagnosis of Gender Dysphoria.

(2)    If under .05B(1) of this directive an inmate is provisionally diagnosed with Gender Dysphoria, the Mental Health Clinician shall place the inmate in a Mental Health Chronic Care Clinic (MHCCC).

(3)    If the provisionally diagnosed inmate refuses treatment under §.05B(2) of this directive, MHCCC staff shall:

3

**Executive Directive Number: OPS.131.0001**

    (a)    Record the refusal in the inmate's medical chart and enter the refusal in the inmate's Electronic Health Record;

    (b)    Notify the following of the refusal:

        (i)    Onsite mental health staff; and

        (ii)    The Mental Health Clinician who referred the inmate to MHCCC; and

    (c)    Follow up with the inmate to determine whether mental health treatment is needed at any time if requested by the inmate or at least once each year following the refusal of mental health services.

(4)    The Mental Health Clinician evaluating an inmate under provisions of §.05B(1) of this directive, regardless of whether the inmate is or is not preliminarily diagnosed as Gender Dysphoric or whether the inmate is determined preliminarily to be Gender Dysphoric and the inmate refuses treatment under §.05B(3) of this directive, shall:

    (a)    Review the case with the on-site mental health staff and assign the inmate to an on-site psychiatric care provider;

    (b)    Notify the following, in writing, of the inmate's diagnosis on a form or in a format approved by the Director of Clinical Services, or a designee:

        (i)    Director of Mental Health;

        (ii)    Deputy Director of Mental Health;

        (iii)    Regional Director of Mental Health;

        (iv)    Contracted Regional Psychiatrist; and

        (v)    Managing official of the facility where the inmate is housed; and

    (c)    Forward the case to the Regional Treatment Team.

(5)    When an inmate is referred to the Regional Treatment Team under §.05B(4)(c) of this directive, the Regional Treatment Team shall refer the case to the Regional Director of Mental Health who shall:

    (a)    Arrange for an evaluation to take place within 4 to 6 weeks of the date the case was referred to the Regional Treatment Team that, at a minimum, includes:

        (i)    A review of the inmate's available medical and mental health records;

        (ii)    A review of the referral information from the Mental Health Clinician;

        (iii)    Consultation with the staff, who personally assessed the inmate; and

**Executive Directive Number: OPS.131.0001**

       (iv)   A face-to-face evaluation of the inmate; and

    (b)   If the inmate is:

       (i)   Not provisionally diagnosed to be Gender Dysphoric, arrange for applicable medical and mental health treatment options.

       (ii)   Provisionally diagnosed to be Gender Dysphoric, notify the Mental Health Clinician to arrange for applicable medical and mental health treatment options.

(6)   When an inmate is referred to the Regional Treatment Team under §.05B(5)(b)(ii) of this directive and the Regional Director of Mental Health assesses the inmate as meeting the criteria for Gender Dysphoria, the Mental Health Clinician shall:

    (a)   If not already in an MHCCC have the inmate placed in an MHCCC and if the inmate:

    (b)   Accepts mental health services, refer the case to the contractual Regional Psychiatrist for evaluation; or

    (c)   Refuses mental health services, comply with review and notification requirements established under §§.05B(4)(a) and (b) of this directive.

(7)   If the provisionally diagnosed inmate refuses treatment under §.05B(6) of this directive, MHCCC staff shall comply with requirements under §.05B(3) of this directive.

C.   Confirmation of a Provisional Diagnosis of Gender Dysphoria.

(1)   If an inmate provisionally diagnosed as Gender Dysphoric accepts treatment under §.05B(6) of this directive, the contractual Regional Psychiatrist shall evaluate the inmate to determine if the inmate meets the criteria for a diagnosis of Gender Dysphoria based on, at a minimum, the same actions required under §.05B(5)(a) of this directive.

(2)   If the evaluation under §.05C(1) of this directive:

    (a)   Confirms the inmate to be Gender Dysphoric, the contractual Regional Psychiatrist shall document the determination and forward the case to the Regional Director of Mental Health.

    (b)   Does not confirm the inmate to be Gender Dysphoric, the contractual Regional Psychiatrist shall document the determination and forward the case to Mental Health Clinician to arrange for applicable medical and mental health treatment options.

(3)   The Regional Director of Mental Health receiving a referral under §.05C(2) of this directive shall refer the inmate confirmed to be Gender Dysphoric to the Regional Treatment Team within 30 calendar days after the referral was received from the contractual Regional Psychiatrist.

(4)   A Regional Treatment Team in receipt of a case under §.05C(3) of this directive shall review the case and may:

Exhibit 2

000005

**Executive Directive Number: OPS.131.0001**

    (a)   Accept the diagnosis; or

    (b)   In cases where there is a disagreement on the diagnosis, consult with a Gender Dysphoria Consultant to confirm the diagnosis.

(5)   If under §.05C(4) of this directive, the Gender Dysphoric diagnosis is:

    (a)   Accepted by the Regional Treatment Team or referred to and confirmed by a Gender Dysphoria Consultant, the Regional Treatment Team shall notify the respective Mental Health Clinician to initiate treatment planning in accordance with §§.05D and E of this directive.

    (b)   Referred to a Gender Dysphoria Consultant and rejected, the Regional Treatment Team shall refer the case to the Regional Director of Mental Health to arrange for appropriate medical and mental health treatment options.

(6)   If an inmate is confirmed to be Gender Dysphoric, the Regional Treatment Team shall develop appropriate and medically necessary treatment recommendations.

D.  Treatment Planning for a Gender Dysphoric Inmate.

(1)   Once an inmate is confirmed in accordance with provisions under §.05C(5)(a) of this directive to be Gender Dysphoric, the Mental Health Clinician assigned to the Gender Dysphoric inmate shall prepare an individualized, initial treatment plan or, if applicable, review and revise an existing treatment plan, which incorporates the diagnosis along with all other outstanding existing mental health issues.

(2)   The individualized treatment plan required under .05D(1) of this directive shall be developed by the Mental Health Clinician in a manner that is consistent with the principles recommended for Gender Dysphoric inmates promulgated by the National Commission on Correctional Health Care and in consultation with:

    (a)   The inmate's treating psychiatrist;

    (b)   The Regional Director of Mental Health;

    (c)   Other clinicians or practitioners providing services to the inmate; and

    (d)   The Regional Treatment Team, in accordance with any recommendations made by the Regional Treatment Team pursuant to §.05C(6) of this directive.

(3)   If an inmate refuses to participate in any or all aspects of the approved individualized treatment plan related to treatment of Gender Dysphoria, the inmate's refusal shall be documented and appropriate medical and mental health services modifications shall be made to the inmate's individualized treatment plan.

000006

**Executive Directive Number: OPS.131.0001**

E.  Treatment Plan Review and Approval.

(1)  Once a proposed treatment plan is developed under §.05D of this directive, the Mental Health Clinician shall forward the proposed plan to the Regional Treatment Team for review to ensure that the recommendations are appropriate considering the inmate's individualized needs.

(2)  The Regional Treatment Team may refer the inmate to the contracted medical services provider for specialty consultations related to endocrine, urological, or gynecological services that may include hormonal therapy recommendations.

(3)  If the Gender Dysphoria Consultant recommends hormone therapy as a component of the individualized treatment plan, the inmate shall be referred to and evaluated by the contracted medical services provider who shall:

(a)  Determine if hormone therapy presents a significant physiological risk or other contraindication to the patient for medical reasons; and

(b)  If so determined, refer the case to the endocrinologist, obstetrician-gynecologist, or urologist under contract with the medical services provider for an appointment to take place within 4 – 6 weeks after the contracted medical services provider made the initial determination that there are significant physiological risks or other contraindications to hormonal therapy.

(4)  A referral under provisions of §.05E(3) of this directive is to determine the appropriate hormone regimen or medical contraindications to initiating or continuing hormonal treatment.

(5)  When an inmate is evaluated in accordance with provisions under §.05E(3) of this directive and a determination is made that hormonal therapy does present medical contraindications:

(a)  The endocrinologist, obstetrician-gynecologist, or urologist shall communicate the findings to the referring contracted medical services provider by completing a consultation form.

(b)  The contracted medical services provider receiving a consultation form under §.05E(5)(a) of this directive shall:

(i)  Forward copies of the consultation to the Department's Regional Health Director and the contractual Regional Psychiatrist for presentation to the Regional Treatment Team;

(ii)  Discuss the recommendations contained in the consultation with the inmate and advise the inmate that the Regional Treatment Team will review the recommendations as part of the monthly review of the individualized treatment plan; and

(iii)  Document the actions taken, as well as, any other recommendations in the inmate's health record.

(6)  Subsequent to a finding that hormonal therapy does present medical contraindications, any follow-up evaluations related to hormonal therapy shall be conducted by an endocrinologist referral on a periodic basis as indicated and determined by the contracted medical services provider.

Exhibit 2                                                                                      000007

**Executive Directive Number: OPS.131.0001**

(7)   An inmate refusing to be evaluated by a medical health care clinician or endocrinologist, obstetrician-gynecologist, or urologist may not receive hormonal therapy due to the potential for ramifications, medical risks, and need for expert medical management by an endocrinologist, obstetrician-gynecologist, or urologist.

(8)   A Gender Dysphoric individualized treatment plan shall be:

    (a)   Updated in accordance with the treatment provider;

    (b)   Revised as necessary to reflect changes in treatment recommendations; and

    (c)   Reviewed by the Regional Treatment Team.

F.   Hormonal Therapy — Continuation Upon Intake.

(1)   At the time of intake in a Department correctional facility, if an inmate is currently under hormonal therapy as part of an established regimen for Gender Dysphoria and the contracted medical services provider verifies the treatment and determines that the regimen:

    (a)   Is not contraindicated, the contracted medical services provider shall:

        (i)    Continue the hormonal therapy;

        (ii)   Notify the Regional Treatment Team; and

        (iii)  Obtain from the inmate a signed release for medical and mental health records related to Gender Dysphoria treatment received prior to intake.

    (b)   Is contraindicated, the contracted medical services provider shall:

        (i)    Record the finding in the inmate's Electronic Health Record;

        (ii)   Explain the rationale for not continuing the hormonal therapy to the inmate;

        (iii)  Refer the inmate to a Mental Health Clinician; and

        (iv)   If deemed appropriate, refer the inmate to a Clinical Pharmacist D.

(2)   Unless determined to be contraindicated, hormonal therapy provided under provisions of §.05F(1) of this directive shall continue until an appropriate individualized treatment plan that may or may not include hormone therapy has been developed and approved by the Regional Treatment Team in accordance with provisions established under this directive.

(3)   A newly admitted Gender Dysphoric inmate currently receiving hormonal therapy for the management of Gender Dysphoria shall be evaluated by the Mental Health Clinician and referred to the contracted medical services provider for a specialty care referral to an endocrinologist for assessment and a determination as to the existence of possible medical contraindications to hormone treatment, which if contraindications do not exist, the:

**Executive Directive Number: OPS.131.0001**

      (a)   Endocrinologist shall recommend the appropriate medication, dose and route for management with hormonal therapy; and

      (b)   Contracted medical services provider shall review and write a corresponding medical order or documents the rationale for alternative treatment.

   (4)   An inmate's refusal to authorize release of pre-incarceration medical and mental health records may, within the discretion of the contracted medical health services provider, be cause for discontinuing or interrupting hormonal therapy or tapering the medication.

   (5)   Regardless of the status of hormonal therapy, the inmate shall be offered and, if accepted, continue to receive applicable mental health services on an on-going basis.

   (6)   The pharmacy contractor shall submit for review to the Director of Mental Health, or a designee, and the Director of Clinical Services a report identifying each inmate receiving hormonal therapy related to Gender Dysphoria.

G.  Informed Consent.

   (1)   An inmate is required to provide informed consent for all procedures and treatment provided in accordance with provisions established under this directive.

   (2)   If a Mental Health Clinician, contracted medical services provider, or other treatment team member believes that the inmate is not competent to provide informed consent for treatment, the contracted medical services provider shall consult with the Regional Director of Mental Health or Deputy Director for Mental Health, or designees, and the Office of the Attorney General for the Department to determine the appropriate course of action.

   (3)   If the inmate who is not competent to provide informed consent for treatment is under a guardianship, the contracted medical health services provider shall consult with the inmate's legal guardian.

   (4)   If the inmate is in need of a guardianship, the Director of Mental Health, or a designee, shall comply with Department procedures for seeking guardianship for the inmate.

H.  Reporting.

   (1)   The Regional Treatment Team shall prepare a quarterly report regarding Regional Treatment Team reviews of Gender Dysphoria cases, in a format approved by the Director of Mental Health.

   (2)   The Regional Treatment Team quarterly report shall be submitted by the 10th day of the month following the close of each calendar quarter (March, June, September, and December) to the Director of Mental Health.

   (3)   The Regional Treatment Team quarterly report shall be:

      (a)   Reviewed by the:

**Executive Directive Number: OPS.131.0001**

      (i)     Deputy Director of Mental Health;

      (ii)    State-wide contractual Psychiatrist;

      (iii)   Regional contracted Medical Services Provider;

      (iv)   Director of Continuous Quality Improvement (CQI); and

      (v)    Regional Case Manager.

   (b)   Available, with clinical data omitted or redacted, to the:

      (i)     Facility managing official;

      (ii)    Deputy Secretary for Operations;

      (iii)   Executive Director, Field Support Services; and

      (iv)   Operations Executive Staff; and

   (c)   Available, with clinical data omitted or redacted, on a need-to-know basis as determined by the Deputy Secretary for Operations, to appropriate Department management staff.

I.   Security Review.

   (1)   If a treatment recommendation is made that potentially presents significant security, safety, or operational issues at the correctional facility, the Director of Mental Health shall refer the treatment recommendation to the Executive Director, Field Support Services, or a designee, for an individualized security review that shall, at a minimum, consider:

      (a)   The inmate's history of incarceration;

      (b)   The inmate's case record;

      (c)   The inmate's facility adjustment; and

      (d)   Security, safety, and facility operations.

   (2)   In the event that the review by the Executive Director, Field Support Services, or a designee, determines that significant security, safety, or operational issues are present, the Executive Director, Field Support Services, or a designee, shall consult with the Regional Treatment Team to determine if treatment modifications are possible to address the identified issues.

   (3)   If the Executive Director, Field Support Services and the Regional Treatment Team cannot agree on treatment modifications, the Executive Director, Field Support Services and the Regional Treatment Team shall:

**Executive Directive Number: OPS.131.0001**

    (a)    Within 60 calendar days of the referral from the Executive Director, Field Support Services for a security review, prepare a joint written report:

        (i)    Detailing treatment issues that conflict with security, safety, and facility operations; and

        (ii)    Recommending alternative treatment solutions that will not conflict with security, safety, and facility operations; and

    (b)    Forward the report to the Deputy Secretary for Operations for a final determination.

(4)    If the Deputy Secretary for Operations, because of safety, security, or operational issues, declines to approve the recommended treatment proposed in a report submitted in accordance with §.05I(3)(b) of this directive, the Director of Mental Health, or a designee, on behalf of the Deputy Secretary for Operations shall:

    (a)    Articulate, in writing:

        (i)    Specific and justifiable reasons for the denial of the recommended treatment, based on significant security, safety, or operational issues; or

        (ii)    Proposed modification of the recommended treatment, based on security, safety, or operational issues; and

    (b)    Forward a copy of the written findings under §.05I(4)(a) of this directive to the Office of the Attorney General for the Department for review and advice.

J.    Case Management.

(1)    A Gender Dysphoric inmate's housing placement shall be made on a case-by-case basis seriously considering the inmate's opinion regarding the inmate's safety and the inmate's biological gender presentation and appearance considering:

    (a)    Intact external genitalia and secondary sex characteristics, such as pubic hair, chest hair, facial hair; and

    (b)    Specific factors, such as partial completion of sex reassignment surgery, removal or augmentation of breasts, or removal of testicles.

(2)    Each inmate shall be evaluated on a case-by-case basis by the facility's Security Chief and Case Management staff with support from the Director, Clinical Services and Deputy Director of Mental Health or specialty consultation considering safety, security, or operational issues.

(3)    Mental health staff may provide input as to clinical recommendations related to housing of a Gender Dysphoric inmate to the managing official and Case Management staff as part of the Regional Treatment Team's individualized treatment plan, however, final determination regarding housing placement is the responsibility of the managing official.

**Executive Directive Number: OPS.131.0001**

(4)    If mental health staff input and recommendations and a managing official's decision on placement of a Gender Dysphoric inmate conflict, the final decision shall be made by the Deputy Secretary for Operations, or a designee.

K.  Custody Issues.

(1)    A Gender Dysphoric inmate shall be confined in accordance with provisions established under the Prison Rape Elimination Act of 2003 and all related Department policy and procedures.

(2)    Consistent with an inmate's security level, a Gender Dysphoric inmate:

(a)    Whose assigned gender is male and expressed gender is female and who is housed in a male facility is permitted to purchase and retain clothing items and other articles authorized for other male inmates at the facility, as well as items authorized for females at a female facility;

(b)    Whose assigned gender is female and expressed gender is male and who is housed in a female facility is permitted to purchase and retain clothing items and articles authorized for other female inmates at the facility, as well as items authorized for males at a male facility; and

(c)    May only purchase and retain personal property and commissary items that are authorized by established policy and procedures related to allowable inmate personal property.

## .06   Attachments/Links.

There are no attachments or links to this directive.

## .07   History.

A.  This directive replaces OPS.131.0001 dated August 15, 2016 by updating language contained in §.05D(2).

B.  This Executive directive supersedes provisions of any other prior existing Secretary's, Department, or unit communication with which it may be in conflict.

## .08   Correctional Facility Distribution Code.

A
S — Medical and Mental Health Staff