IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division



AMBER MARIEE CANTER
 (F/K/A CHARLES CANTER),          *

  Plaintiff,                       *      Case No.: GJH-17-908

v.                                 *

STEPHEN T. MOYER, *et al.*         *

  Defendants.                      *

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Defendants Stephen Moyer, Sharon Baucom, M.D., Randall S. Nero, Bruce Liller, Lauren Beitzel, and Assistant Warden Jeff Nines[1] move to dismiss the above-entitled civil rights action or in the alternative for summary judgment. ECF No. 17. Plaintiff opposes Defendants' Response to Show Cause, ECF No. 12, raising matters identical to those raised in Plaintiff's initial Motion for Preliminary Injunction, ECF No. 3, and moves for appointment of counsel, ECF No. 14. No hearing is necessary. Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendants' Motion is granted, in part, and denied, in part. Plaintiff's Motion for Appointment of Counsel is granted.

### I.  BACKGROUND[2]

Plaintiff Amber Canter, formerly known as Charles Canter, is a person who is anatomically male, but identifies as female. At the time her Complaint was filed, Canter was

---

[1] Although this Court directed service for Defendants Dr. Mahboob Ashraf, Krista Bilak, Dr. Harry Murphy, and Dr. Robustiano Barrera on Joe Ebbit, Manager for the Risk Management division of Wexford Health Sources, Inc., Ebbit never responded to the Court's Order and service was never effected. *See* ECF No. 11 at 4.
[2] Unless otherwise noted, the facts are taken from the Complaint and assumed to be true.

1

incarcerated in North Branch Correctional Institution ("NBCI"), an all-male prison located in Cumberland, Maryland and operated by the Maryland Department of Public Safety and Correctional Services (DPSCS). While this case was pending, Canter was released on parole. *See* ECF No. 17-1 at 10; ECF No. 19.[3]

In her Complaint, Canter asserts that she suffers from gender dysphoria but because of the DPSCS "freeze-frame" policy and its failure to provide an official diagnosis, she was denied hormone treatment resulting in numerous acts of self-injury (including attempts at self-castration) and approximately 18 attempts at suicide. ECF No. 1 at 8. Canter explains that she was receiving hormone treatment prior to her incarceration in 2013 on "the black market" from a doctor. Those treatments included injections with Premarin, an estrogen-based drug. In addition, Canter asserts that she developed breast lumps with leakage which were caused by withdrawal from estrogen. *Id.* at 10. Despite her many attempts on her own life, Canter claims the only treatment she received was 45 minutes of counseling once-a-month. When Canter sought hormone treatments from prison medical care providers, she was told she could not have them because she had not been diagnosed as having gender dysphoria by the psychology department at NBCI. *Id.* at 11.

Cantor sought a preliminary injunction and Court Order requiring Defendants to provide treatment for her gender dysphoria. ECF No. 3. Thereafter, the Court issued an Order to Show Cause to Defendants to show why injunctive relief should not be granted in her favor, given the serious allegations raised. ECF No. 5. In response to that Order, Defendants maintained that Canter had not been identified as someone suffering gender dysphoria and provided assurances to the Court that Canter would be evaluated by a psychologist from Johns Hopkins Hospital, Dr.

---

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Kraft, to better assess her needs for treatment. ECF No. 9. Defendants further stated that Canter would be reassessed for gender dysphoria on June 2, 2017. *Id.*

Canter filed a Reply on June 12, 2017, stating that there had been no reassessment as stated by Defendants, nor had she been seen by Dr. Kraft as represented by Defendants in their response. ECF No. 12. Subsequent to that Reply, Canter filed a Motion to Appoint Counsel, ECF No. 14, stating that the promised assessment by Dr. Kraft had yet to occur and that Defendants were not allowing Canter to have copies of her medical and mental health records. Canter further provided the name of counsel willing to represent her in this case. *Id.*

Defendants' Motion to Dismiss or for Summary Judgment restates the position made in the Response to Show Cause—that Canter was never diagnosed as suffering from gender dysphoria—and asserts that the claim for injunctive relief is now moot due to Canter's release from incarceration. ECF No. 17. The declarations under oath from Defendants Nero, Liller, Nines, and Beitzel assert that each declarant "did not delay, hinder or prevent Charles Canter from receiving me[n]tal health care." ECF Nos. 17-3, -4, -5, -6. Nines adds in his declaration under oath that he does not have any control over the delivery of mental health services to inmates and that the American Correctional Association accredited NBCI in January 2017. ECF No. 17-5. Liller, who is the Mental Health Program Manager at NBCI, states only that he is familiar with Canter and that psychological and psychiatric treatment are available to inmates at NBCI upon request. ECF No. 17-4. None of the Defendants, all of whom aver they are "familiar" with Canter, provide any statements regarding Canter personally. There are no medical or psychology records submitted, nor do Defendants deny that Canter attempted suicide, engaged in self-injurious acts, and presented as female in appearance. Defendants do not address the failure to have Canter evaluated by Dr. Kraft prior to her release from incarceration, they simply rely on

3

the fact that Canter was not diagnosed with gender dysphoria and therefore did not fall within the purview of the policy governing treatment of inmates suffering with gender dysphoria to otherwise warrant treatment. *See* ECF No. 17-1.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of a plaintiff's complaint. *See Edwards v. Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The Supreme Court has articulated the proper framework for analysis:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (*abrogated on other grounds*). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*; *Sanjuan v. American Board of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, *see* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327(1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnotes omitted).

This standard does not require a defendant to establish "beyond doubt" that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* at 561. Once a

4

claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 562. The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979).

**B. Motion for Summary Judgment**

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex,* 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In *Anderson v. Liberty Lobby, Inc.,* the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether

a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

### III. DISCUSSION

**A. Injunctive Relief under § 1983**

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994).

Where injunctive or declaratory relief is requested in an inmate's complaint, it is possible for events occurring subsequent to the filing of the complaint to render the matter moot. *See*

*Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (transfer of prisoner moots his Eighth Amendment claims for injunctive and declaratory relief); *see also Slade v. Hampton Rd's Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (pre-trial detainee's release moots his claim for injunctive relief); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (holding that the transfer of a prisoner rendered moot his claim for injunctive relief). Canter's claims for injunctive and declaratory relief are made moot by her release from prison. But Canter also seeks monetary damages under 42 U.S.C. § 1983, so her entire complaint is not moot. *See* ECF No. 1 at 21.

### B. Liability for Damages under § 1983

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695–96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the

medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). A medical condition is serious when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844.

Reasonableness of the actions taken must be judged in light of the risk the defendant was actually aware of at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken); *see also Jackson v. Lightsley*, 775 F.3d 170, 179 (4th Cir. 2014) (physician's act of prescribing treatment raises fair inference that

he believed treatment was necessary and that failure to provide it would pose an excessive risk). While "a prisoner does not enjoy a constitutional right to the treatment of his or her choice, the treatment a prison facility does provide must nevertheless be adequate to address the prisoner's serious medical need." *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013) (refusal to evaluate transgender inmate for gender reassignment surgery where current therapy failed to alleviate urge for serious self-harm raises cognizable claim under Eighth Amendment).

There is no underlying distinction between the right to medical care for physical ills and its psychological and psychiatric counterpart. *Bowring v. Goodwin*, 551 F.2d 44, 47 (4th Cir. 1977). A prisoner is entitled to such treatment if a "[p]hysician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial." *Id.* The *Bowring* Court further concluded that the aforementioned right to such treatment is based upon the essential test of medical necessity and not upon that care considered merely desirable. *Id.* at 48.

Plaintiff has adequately alleged that Defendants were deliberately indifferent to her medical needs. As early as October 15, 2015, Defendants were aware that Canter was possibly having "sex identity issues" ECF No. 1-1 at 14 (Consultation Report by Liberatus DeRosa, MD); and that she had been on "estrogen in [the] past as part of his sexual identity crisis" and "apparently still desiring to make a change" *id.* at 16 (Chronic Care Visit). *See also id.* at 21 (Dec. 4, 2015, provider visit noting "transgender conflicts" and issues caused by elevated prolactin levels). In addition, Canter was seeking gender reassignment medications as early as May 22, 2016. *Id.* at 28 (Sick Call Record completed by Amy Booth, RN). On March 11, 2016,

9

while Canter was incarcerated at Eastern Correctional Institution, Canter authorized the release of all information relating to her gender dysphoria to the DPSCS. *Id.* at 65. On June 13, 2016, Canter asked to be sent to a "Hormone/Gender Specialist for diagnosis and treatment" so she could be "placed back on [her] hormone therapy." *Id.* at 67. On August 5, 2016, Canter submitted a sick call slip asking for the status of a request for treatment for her transsexualism and stating she would like to be castrated or get hormone therapy. *Id.* at 75. On December 17, 2016, Canter submitted a sick call slip stating that she was experiencing "extreme pain in both testicles from a castration attempt" and asked to be treated or for medical staff to "cut them off." *Id.* at 66; *see also id.* at 68 (December 19, 2016 sick call slip relating similar problem).

Further, in a letter stamped received December 20, 2016, and acknowledged by Defendant Nero, ECF 1-2 at 2, Canter states that she was diagnosed as having gender identity disorder at Maryland General Hospital Center when she was admitted to the psychiatric ward from October of 2012 through April of 2013. *Id.* at 3–4. Canter provides her mother's name and phone number to verify that she has suffered gender dysphoria since the age of 7 or 8. *Id.* at 3. Canter states in the letter that Liller and Beitzel are preventing her from receiving medical treatment by refusing to provide a diagnosis of gender dysphoria or to send her out to a professional who can render the diagnosis. *Id.* at 4. Canter further states that she attempted to kill herself numerous times in the last year and that four weeks prior she attempted self-castration. *Id.* Canter also submits a letter dated July 11, 2016, from Liller stating that "one qualifying factor for anyone seeking hormonal therapy is that hormonal therapy prior to incarceration must be established." ECF 1-2 at 19. In the letter, Liller also states that Canter has "been seen by multiple mental health providers none of whom has offered a diagnosis of gender dysphoria." *Id.*

10

In responding to the Order to Show Cause, Defendants assured the Court that Canter was being assessed for gender dysphoria by an expert from Johns Hopkins Hospital. ECF No. 9. For reasons not shared with the Court, that assessment never took place.[4] But Defendants' assurance that such assessment would take place is further evidence that Defendants were aware that Canter was suffering. Additionally, it is clear that the refusal to evaluate Canter for gender dysphoria perpetuated the problem because without a diagnosis, no medical treatment was available. Defendants offer no evidence indicating why Canter did not warrant diagnosis with gender dysphoria or that she otherwise received adequate medical care; rather, they simply offer flat denials that they hindered treatment. Defendants also do not offer evidence to dispute Canter's allegations that she attempted castration and suicide on multiple occasions based on her failure to receive adequate gender dysphoria treatment. Without more, there remain genuine issues of material fact as to whether Defendants were deliberately indifferent to Canter's needs by not diagnosing her with gender dysphoria and providing the requisite treatment in the event that she does suffer from gender dysphoria. While Canter did not file an Opposition in Response to the dispositive motion, the Court finds that her failure is without significance where, as here, the dispositive motion falls far short of demonstrating that the Complaint does not state a claim upon which relief may be granted.[5]

---

[4] While Nero states that Plaintiff was seen by Dr. Kraft on July 18, 2017, Defendants' fail to provide any evidence of Kraft's examination or conclusions. ECF No. 17-3 ¶ 3. Plaintiff states that she has not been seen by Kraft, see ECF No. 12-2 at 2, and Nero's declaration suggests that Kraft has not completed whatever review he may have initiated. See id. ¶ 4.

[5] Similarly, as Defendants' fail to offer sufficient evidence to establish that they did not violate Canter's Eighth Amendment rights, the Court has no basis to find that Defendants are entitled to qualified immunity. See ECF No. 17-1 at 10 (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) (alleging that Defendants have not violated any "clearly established constitutional right of which a reasonable public official should have known.")). As alleged, Defendants' ignored Plaintiff's requests for care and failed to provide consultation by Kraft pursuant to the Court's Show Cause Order, and their failure to do so cannot be seen as "objectively reasonable[]." See *Harlow*, 457 U.S. at 818. Moreover, Plaintiff's allegations are similar to the facts set forth in *De'lonta v. Johnson*, 708 F.3d 520 (4th Cir. 2013), and Defendants cannot credibly assert that Plaintiffs' right to treatment is not clearly established.

Separate from the underlying merits of Cantor's Eighth Amendment Claim, Defendants argue that Moyer, Baucom, and Nero should be dismissed as they had no personal involvement in the alleged violation. ECF No. 17-1 at 7 (citing *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("In order for liability to exist under § 1983, there must be personal involvement by the defendant in the alleged violation.")). While true for Moyer, Defendants' exhibits suggest that Baucom and Nero had personal knowledge of, and involvement with, Cantor's treatment and were in a position to direct such treatment. *See* ECF Nos. 17-1; 17-3; *see also Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (noting that supervisory liability exists under § 1983)). Therefore, the Court will grant Defendants' motion to dismiss as to Defendant Moyer only.

### C. Appointment of Counsel

Following receipt of Defendants' Reply to the Court's Show Cause Order, Plaintiff reasserts her motion for appointment of counsel. ECF No. 14. While the Court previously denied Plaintiff's initial motion for appointment of counsel without prejudice, ECF No. 11 ¶ 7, the Court now finds that counsel is warranted. There is no absolute right to appointment of counsel in civil matters; a federal judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one and may be considered where an indigent claimant presents exceptional circumstances. *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987); *Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also, Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989). While there is no comprehensive definition of exceptional circumstances, "[t]he existence of such circumstances will turn on the

quality of two basic factors—the type and complexity of the case, and the abilities of the individuals bringing it." *Id.* (citing *Branch*, 686 F.2d at 266).

Following the Court's decision herein, this action will proceed to discovery. Plaintiff has allegedly been unable to obtain copies of the records necessary to pursue her claim, ECF No. 14 at 2, and Defendants' failure to produce any medical records or proof of compliance with the Court's Show Cause Order in support of their motion suggests that Plaintiff will require assistance in completing discovery. Moreover, Plaintiff's claim turns on whether Defendants' knew of, but failed to treat, her alleged condition of gender dysphoria, and will require an extensive review of her medical records, deposition of treatment providers, and potential expert testimony. Because Plaintiff has presented a colorable claim that she likely cannot successful advance *pro se*, the Court finds that appointment of counsel is warranted.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment, ECF No. 17, shall be granted in part, and denied, in part. Plaintiff's Motion for Appointment of Counsel, ECF No. 14, shall be granted. A separate Order follows.

Dated: March 26, 2018

GEORGE J. HAZEL
United States District Judge