# Exhibit A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### District of Maryland

| | |
|---|---|
| Amber Maree Canter | ) |
| _Plaintiff_ | ) |
| v. | )   Civil Action No.   8:17-cv-00908-GJH |
| | ) |
| J. Michael Zeigler, et al. | ) |
| _Defendant_ | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

Custodian of Records of the Maryland Department of Public Safety and Correctional Services

To:  c/o Damon A. Pace, Esq., Maryland Office of the Attorney General, 210 St. Paul Pl., 19th Fl., Baltimore, MD 21202

_____
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

      See attached Schedule A with Exhibits A and B

| Place: Ballard Spahr LLP, 300 E.Lombard St., 18th Fl. Baltimore, Maryland 21202 | Date and Time: 11/19/2021 10:00 am |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   10/20/2021
_____

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | /s/ Timothy F. McCormack |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Plaintiff Amber M.Canter                                                   , who issues or requests this subpoena, are:
Timothy F. McCormack, Michelle M. McGeogh, Ballard Spahr LLP, 300 E. Lombard St., 18th Fl., Baltimore, MD 21202
(410) 528-5600, mccormackt@ballardspahr.com and mcgeoghm@ballardspahr.com

#### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   8:17-cv-00908-GJH

### PROOF OF SERVICE
#### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❑  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2) *For Other Discovery.*** A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2) *Command to Produce Materials or Permit Inspection.***
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3) *Quashing or Modifying a Subpoena.***
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2) *Claiming Privilege or Protection.***
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SCHEDULE A**

**DEFINITIONS**

As used in these Requests and the attached Exhibits, the following terms are to be interpreted in accordance with these definitions, each of which – notwithstanding any definition below – is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure:

1.      The term "Action" shall mean the case in which this Subpoena was issued, which is captioned as *Canter v. Ziegler, et al.*, Case No. GJH-17-908, and which is pending in the United States District Court for the District of Maryland.

2.      The terms "Plaintiff" and "Canter" shall mean Plaintiff in the Action, Amber Maree Canter, and all of her agents and representatives.

3.      The term "Complaint" shall mean the Second Amended Complaint filed by the Plaintiff in the Action, as well as any amended complaints filed thereafter.

4.      The term "DPSCS" shall mean the State of Maryland Department of Public Safety and Correctional Services, and all of its agents, representatives, employees, and attorneys.

5.      The term "Corizon" shall mean Corizon Correction Healthcare, and all of its agents, representatives, employees, and attorneys.

6.      The term "NBCI" shall mean the North Branch Correctional Institution, and all of its agents, representatives, employees, and attorneys.

7.      The term "WCI" shall mean the Western Correctional Institution, and all of its agents, representatives, employees, and attorneys.

8.      The term "MCI-J" shall mean the Maryland Correctional Institution - Jessup, and all of its agents, representatives, employees, and attorneys.

9.      The term "RCI" shall mean the Roxbury Correctional Institution, and all of its agents, representatives, employees, and attorneys.

10.     The term "ECI" shall mean the Eastern Correctional Institution, and all of its agents, representatives, employees, and attorneys.

11.     The term "BCCC" shall mean the Baltimore City Correctional Institution, and all of its agents, representatives, employees, and attorneys.

12.     The terms "you" and "your" shall mean DPSCS and all of its agents, representatives, employees, and attorneys.

13.     "Person" means any natural individual, partnership (limited or general), joint venture, corporation, association, committee, agency, or other legal entity, including such individual or entity's representatives.

14.     The terms "communicate" and "communication" refer to every manner or means of disclosure or transfer or exchange of information whether orally or in writing and whether face to face, by telephone, mail, e-mail, SMS text messages, messages transmitted through software applications (e.g., WhatsApp, SnapChat), telexes, meetings, discussions, releases, personal delivery, or any other means of imparting or exchanging information.

15.     The term "document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a)(1)(A).  The term includes, but is not limited to, all writings, journal entries, memoranda, letters, medical reports, requests for remedy, witness statements, findings, drawings, graphs, charts, photographs, video records, recordings, reports, correspondence, handwritten notes, e-mails, other data compilations from which information can be obtained, or translated, if necessary, by you through detection devices into reasonably usable form, and all forms of Electronically Stored Information ("ESI").

16.     The terms "referring to" or "relating to" mean analyzing, compromising, constituting, containing, contradicting, describing, dealing with, disclosing, discussing, embodying, evidencing, explaining, identifying, involving, memorializing, pertaining to, reflecting, reviewing, setting forth, showing, stating, supporting, summarizing, symbolizing or in any way logically or factually connecting with the matter described in this request.

17.     The term "including" means "including, but not limited to."

## INSTRUCTIONS

1.     This Subpoena for Documents is deemed continuing in nature.  If additional facts, documents, information or witnesses become known to you, supplementary responses and documents must be served promptly on Plaintiff's counsel.

2.     Whenever production of documents is requested, such request includes the production of materials in the possession, custody, or control of DSPCS's present or former agents, representatives, experts, persons consulted concerning any factual matters, and, unless privileged, its attorneys.

3.     Whenever a request seeks the production of a document that no longer exists or has been altered, you must state the date of the alteration, the reason for its non-existence or alteration, the identity of each and every person who altered or repaired, participated in, ordered, or suggested its destruction, alteration, or repair.  In addition, if the document at issue has been destroyed, state whether the document was destroyed as a result of a document retention or destruction policy, and if so, produce a copy of that policy.

4.     If documents called for are not available to you because they are in the custody or control of a third person, identify such documents and the third person in whose possession or control said documents are to be found.

5.      If a document or communication is not produced based on the assertion of a privilege or legal protection (e.g., the work-product doctrine), state the following:

      (a)    the request to which it is responsive;

      (b)    its date;

      (c)    its nature (e.g., letter, memorandum, telephone message);

      (d)    its subject matter and title, if any;

      (e)    its intended recipients, along with all other known recipients (e.g., for an e-mail, those receiving it by CC or BCC), and the business, legal title, or position of each;

      (f)    each person who authored the document or made the communication, and his, her, or its business, legal title, or position;

      (g)    the purpose for which it was made;

      (h)    the circumstances, if known, under which it was conveyed; and

      (i)    the nature of and basis for the privilege or immunity claimed.

6.      When a document or communication contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material.  If a privilege is asserted with regard to part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed.  When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration.  Any redaction must be clearly visible on the redacted document.

7. If any documents are not produced because of an objection, clearly state that documents are being withheld, and identify such documents by stating all of the information requested in instruction 6(a) through (h) and the nature of the objection.

8. If production of any requested document is objected to on the grounds that production is unduly burdensome, describe the burden or expense of the proposed discovery.

9. If, in responding to this Subpoena, you object on the basis of any supposed ambiguity, identify the ambiguity, state how you interpret or construct the term or phrase at issue, and then respond based on that interpretation or construction.

10. "All" shall include "any" and vice versa as necessary to bring within the scope of each request all information that otherwise might be construed to be outside its scope.

11. The singular shall be construed to include the plural and the plural shall be construed to include the singular.

12. The present tense shall be construed to include the past tense and the past tense shall be construed to include the present tense.

13. "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests, any information that might otherwise be construed to be outside its scope.

14. Produce original documents whenever such documents are available to you.

15. Unless otherwise specified, this Subpoena seeks documents created in or concerning the time period April 1, 2014 through the date of service of this Subpoena (the "Relevant Time Period").

16. **Collect and produce all documents in accordance with and as described in the attached Instructions on Electronic and Hardcopy Document Discovery (<u>EXHIBIT A</u>).**

## DOCUMENTS REQUESTED

1.      All documents referring or relating to the incidents at issue that are described in the Complaint, including memoranda, handwritten notes, correspondence, written statements, e-mails, audio or video recordings, photographs (in full color format), reports, data compilations, drawings or findings.

2.      All documents evidencing, referring, or relating to any investigation conducted regarding the incidents at issue that are described in the Complaint, including all documents maintained by any state agency involved with the incidents, including the Office of the Attorney General, DPSCS, NBCI, WCI, MCI-J, ECI, RCI, BCCC, or the Internal Investigations Unit.

3.      All documents referring or relating to any communication between you and any party referring or relating to any matter relating to the subject matter of this litigation.

4.      All minutes of the Mental Health Committee during the Relevant Time Period.

5.      All minutes of the Regional Gender Dysphoria Committee the Relevant Time Period.

6.      Plaintiff's complete medical file, including documents dated outside the Relevant Time Period.

7.      Plaintiff's complete base file, including documents dated outside the Relevant Time Period.

8.      All documents referring or relating to DPSCS's policies in effect during the Relevant Time Period, including the policies themselves, relating to transgender inmates, including medical or mental health care to be provided to transgender inmates.

9.      All documents referring or relating to DPSCS's policies in effect during the Relevant Time Period, including the policies themselves, relating to retaliation (or a prohibition

against retaliation) against inmates, including retaliation for litigation initiated by inmates and/or inmates' use of the Administrative Remedy Procedure.

10.     All documents referring or relating to DPSCS's policies in effect during the Relevant Time Period, including the policies themselves, relating to standards of medical and mental health care to be provided to inmates.

11.     All documents referring or relating to DPSCS's training of correctional officers or other agents or employees related to transgender inmates.

12.     Your contracts for services rendered to inmates by Corizon, and any other medical or mental health care provider, and all documents related thereto, including complete schedules of all medical services, medical procedures, treatments, and medications (including quantities) that are or are not covered under the contracts.

13.     Documents sufficient to show the medications and treatments available or not available to transgender individuals that are covered under your contracts with Corizon or any other medical care provider.

14.     Documents sufficient to show whether gender-affirming surgery, including orchiectomy (i.e., bottom surgery), is a covered procedure under your contracts with Corizon or any other medical care provider.

15.     All documents you have previously produced to the United States Department of Justice, Attorney General of Maryland, or other government agency or law enforcement entity, or to private parties in civil litigation, related to transgender inmates.

16.     All documents referring or relating to the discharge, suspension, or discipline of any agent or employee of DPSCS, NBCI, WCI, MCI-J, ECI, RCI, or BCCC for conduct related to any inmate's sexual orientation or gender identity.

17.     All documents, including video, referring or relating to the discharge, suspension, or discipline of Correctional Officer Donovan related to his posting a video of Plaintiff on social media on or around September 3, 2021.

18.     All documents referring or relating to any analysis by DPSCS, NBCI, WCI, MCI-J, ECI, RCI, BCCC, or the Internal Investigation Unit within the past ten years of the treatment of transgender inmates, including inmate complaints, and all non-privileged documents referring or relating to any investigations conducted as a result of such analysis, including any investigations by DPSCS, NBCI, WCI, MCI-J, ECI, RCI, BCCC, or the Internal Investigation Unit.

19.     All documents responsive to Plaintiff's list of search terms as applied to the list of identified custodians and non-custodial sources, which is attached hereto as **EXHIBIT B**.

20.     All documents pertaining to the taking, storage, or disposition of Plaintiff's personal property, medications, and legal papers, which were removed from her cell at MCI-J upon her transfer to RCI in 2021.

21.     All documents evidencing, referring to, or relating to any investigation of Plaintiff's complaint that certain of her legal papers and medications were removed from her cell at MCI-J but not delivered to Plaintiff at RCI upon her transfer in 2021.

22.     All documents relating to Plaintiff's housing assignments during the Relevant Time Period.

23.     All documents relating to Plaintiff's transfer between various institutions, including NBCI, WCI, and MCI-J, ECI, RCI, or BCCC during the Relevant Time Period.

24.     All documents relating to meetings at which Plaintiff's medical care or the Action were discussed, including agendas, minutes, notes, or presentations.

25.     All documents relating or referring to any Internal Investigations Unit investigation relating to Amber Canter.

26.     All documents relating or referring to any Internal Investigations Unit investigation involving any Defendant in this Action.

## EXHIBIT A

### Instructions on Electronic and Hardcopy Document Discovery

**I.      Collection of ESI and Hard Copy Documents**

1.      You must take reasonable steps to preserve and collect relevant Electronically Stored Information ("ESI") (as well as associated automatically extracted metadata) using methodologies reasonably calculated to preserve metadata and to facilitate processing and searching of extracted metadata and text.

2.      You shall make reasonable efforts to remove exact duplicates both within and across custodians and data sources for purposes of production. Where such de-duplication occurs, all custodians or other data identification of such ESI shall be identified, where available, in a data load file ("DAT").

**II.      Production of ESI**

1.      Unless otherwise agreed in writing, all responsive ESI (except for certain ESI that shall be produced in native format) shall be produced with Bates numbered images in TIFF format with Group IV compression for black and white documents, or JPG format for color documents. Images should have a resolution of no less than 300 dpi and should be accompanied by image load files with *.lfp and *.opt file extensions that contain document boundaries, a data load file with *.dat file extension that contains fielded information and metadata identified in Exhibit 1, where available, and document-level extracted text files with *.txt file extension. The image load and data load files must allow for linkage between the parent and child documents, as well as between the metadata, extracted text, and native formatted files.

2.      ESI shall be produced in color.

3.      Each TIFF image shall have a unique sequential identifying number, which is the Bates number of the page. To the extent a document is produced in native format, a placeholder TIFF image will also be produced bearing a Bates number and the native file will be named per the corresponding Bates number.

4.      For each item of ESI, to the extent automatically extracted metadata exists for that item, the metadata fields identified in Exhibit 1 shall be included in the data load file.

5.      Due to the nature of their content, the following files shall be produced in native format: Excel spreadsheets, .pptx files, scheduling files (e.g., Primavera or Microsoft Project), 3D drawings (e.g., AutoCAD or DWG), audio/visual files (e.g., *.mp3, *.mp4, *.m3u, *.m4a, *.mid, *.ra, *.wav, *.wma, *.avi, *.mov, *.mpeg, *.mpg, *.wmv, *.gif, *.jpeg, *.jpg, *.png), and any other file that if printed is not viewable as it would be in the normal course of business. Any other individual document shall be produced in native format upon the reasonable request of the Receiving Party. Any documents produced in native format will have a single-page placeholder TIFF image included in the production with the Bates number and text stating "Document Produced in Native Format." Both the TIFF placeholder and native file should be named after the

corresponding Bates number, and the data or load file shall contain the full path to the native document.

6.      For redacted documents, you will perform optical character recognition ("OCR") on the redacted images and provide the document-level text generated by the OCR process (omitting the redacted portion(s)). To the extent Excel spreadsheets or other documents produced in native format require redactions, either the file may be provided in native format with redactions and the information behind the redactions deleted or said files may be converted to TIFF image(s) and redacted accordingly.

7.      Some files may be inaccessible due to password protection or corruption. If reasonable efforts to obtain useful TIFF images of such files are unsuccessful, the documents will be accounted for with a Bates stamped placeholder image with text stating "File Unable to be Processed."

8.      The Parties agree to meet and confer regarding production format of any structured data and/or non-standard data sources. The Parties will cooperate to facilitate the acquisition of appropriate software, licenses, and technical information necessary to review native files.

9.      Production media may be provided via encrypted CD, DVD, flash drive, external hard drive, or secure file transfer protocol.

## III.    Hard Copy Documents

1.      Unless otherwise agreed in writing by the Receiving Party, documents not maintained in electronic form shall be electronically scanned and produced with Bates numbers in Group IV TIFF format at not less than 300 dpi resolution with *.tif file extension and accompanied by image load files with *.lfp and *.opt file extensions that contain document boundaries, a data load file with *.dat file extension that contains fielded information and metadata identified in Exhibit 1 (to the extent possible), and document-level associated optical character recognition ("OCR") text files with *.txt file extension.

2.      Documents may be produced as black and white TIFF images; however, individual documents shall be produced as TIFF images preserving colors in the original document upon the reasonable request of a Receiving Party. Reasonable, good faith judgment shall be used in determining whether to produce documents as black and white or color images so as to limit the requests for reproduction of black and white images in color.  If you make your hard copy documents available for inspection, the Receiving Party reserves the option of requesting a color copy of a particular document (to the extent such color copy exists).  The added costs associated with requests for color copies will be borne by the Receiving Party.

3.      Any oversized document not maintained in electronic form will be made available to the Receiving Party in original hardcopy format for inspection and copying.  The Receiving Party will assign and affix Bates numbers using an alphanumeric identifier consistent with the Producing Party's format to those documents selected for copying.

4.      Reasonable efforts shall be used to scan the documents at or near their original size, so that the print or image on the document appears straight, and not skewed.  Image size may be

reduced as necessary to display production numbers and confidentiality designations without obscuring text.

5.      Reasonable efforts shall be used to capture the box, file folder, and other labeling information for the documents as they are kept in the ordinary course of business. Any handwritten notes, sticky tabs, and/or tabs shall also be scanned and provided in electronic format.

6.      Plaintiff reserves and maintains the right to physically inspect your documents that are not maintained in an electronic form, as those documents are kept in the ordinary course of business.

## IV.    Bates Labeling

1.      Each page of all images produced must be clearly labeled with an indelible, legible, unique Bates number identifier, which shall include the name or an abbreviation of the name of the producing Party in addition to numerals, electronically "burned" onto the image.  Reasonable steps shall be taken to place the Bates number at a location that does not obscure any information from the source document.  There shall be no other legend or stamp placed on the document image unless a document qualifies for designation as "confidential" (to be addressed below or by another agreement).  In such case, the document image may also have burned in an appropriate legend confidentiality at a location that does not obscure any information from the source document.  If the confidentiality designation of a document is later changed, the Producing Party shall produce a new version of the document with the appropriate confidentiality legend.

2.      The TIFF image file names shall correspond with the Bates number imprinted on the image.  For example, if an image is imprinted with the Bates number "PARTY0000001" was imprinted, then the image file for that image would bear the file name "PARTY0000001.tif." Documents produced in native format with placeholder TIFF images shall also be named after the corresponding Bates number.

## V.    Designation of Confidential Documents

1.      You may designate a document as "Confidential Information" by (i) affixing a label to each page of the document that reads "Confidential" or, in the case of ESI that is produced in native format, by producing a TIFF placeholder image in addition to the native file and assigning the confidential designation to the TIFF placeholder image or (ii) providing written notice of the designation to all counsel of record, which notice shall identify the designated document with sufficient particularity that it may be readily identified (including by identifying a unique Bates number identifier affixed to the document). Documents containing employment and personnel files, financial data, personal identifying information, and any other information deemed to be confidential by the Producing Party pursuant to applicable provisions of the relevant statutes and case law, may be designated Confidential Information.

2.      Confidential Information may not be used by any Party recipient of such Confidential Information for any purpose other than in connection with the litigation in *Canter v. Ziegler, et al.*, 17-cv-908(GJH) (D. Md.) or *Canter v. Schoppert, et al.*, Case No. 16-cv-2545(GJH) (D. Md.) (the "Litigation").  Confidential Information may not be disclosed by the Party recipient of such Confidential Information to anyone other than those persons designated in Paragraph VI.3

below, except by express written agreement from the producing Party or by Agreement of the Court.

3.      Confidential Information may be disclosed by the Parties to only the following persons:

i.      In-house counsel for any Party and outside counsel who have appeared of record for any Party in the litigation, and partners, shareholders, associates, paralegal assistants, clerical staff, secretaries and other employees who are regularly employed by any Party or such counsel and are engaged in assisting with respect to the litigation;

ii.     Experts or consultants retained by the Parties or their counsel with respect to the litigation, but who are not otherwise regularly employed by the Parties, and any such expert's or consultant's regularly employed assistants, clerical staff, and secretaries who are engaged in assisting such expert or consultant with respect to the litigation;

iii.    Only to employees of a party required in good faith to provide assistance in the conduct of the litigation in which the information was disclosed;

iv.     Persons shown on the face of the Confidential Information to have authored or received it;

v.      Any person whom the Party claiming the confidentiality agrees, in advance and in writing, may receive Confidential Information;

vi.     Court reporters and videographers and persons preparing transcripts of depositions for the litigation;

vii.    The Court, or any other court of competent jurisdiction, and their staff or other essential court personnel, for purposes of the litigation;

viii.   Any consultant(s) retained by the Receiving Party or counsel to assist with trial-related matters or to prepare demonstrative or other exhibits for purposes of the litigation, and any such consultant's regularly employed assistants, clerical staff, and secretaries who are engaged in assisting such expert or consultant with respect to the litigation; and

ix.     Deponents and/or witnesses in the course of deposition or trial testimony in the litigation and any person who is being prepared to testify or to be deposed in the litigation, to the extent that such confidential information is necessary for their testimony or deposition.

4.      In addition to the individuals identified above, Confidential Information may be disclosed to former employees of a Party as reasonably necessary for purposes of the litigation, provided each such person read this Protective and Confidentiality Order and sign an Endorsement in the form attached hereto as Exhibit 2.

5.      Prior to any disclosure of Confidential Information to any person retained as an expert and/or consultant counsel retaining such person shall cause such person to read this

Protective and Confidentiality Order and sign an Endorsement in the form attached hereto as Exhibit B.

6.      Each person who is permitted to see Confidential Information except those identified in Paragraph VI.3, shall also agree in writing to be bound by the terms of this Agreement by signing an Endorsement in the form attached hereto as Exhibit 2.  Counsel obtaining such signed Endorsements shall retain all such signed Endorsements and shall make copies available, upon request in writing, to counsel for any other Party.

7.      Notwithstanding the provisions of this Agreement, nothing in this Agreement shall:

      i.      Limit a Party's use or disclosure of its own Confidential Information;

      ii.      Prevent disclosure of Confidential Information with the prior written consent of counsel for the disclosing Party;

      iii.      Apply to information in the public domain or obtained from sources other than discovery in this litigation regardless of whether such information is also contained in documents designated as Confidential Information.

8.      Whenever a deposition involves the disclosure of Confidential Information, the relevant portions of the deposition transcript may be designated as Confidential Information and shall thereafter be subject to the provisions of this Agreement.  Such designation shall be made on the record during the deposition whenever possible, but a Party may designate portions of the deposition transcript as Confidential Information after transcription, provided written notice of the designation is given to all counsel of record within thirty (30) days after the court reporter's delivery to the designating Party, by e-mail or otherwise, of the final transcript.

9.      Certain documents, which may contain information that is so sensitive that it should not be disclosed to any person other than counsel for the parties, and in particular should not be disclosed to the parties themselves,  shall be produced on a "Confidential—Attorneys' Eyes Only" basis. Information designated with the tag "Confidential—Attorneys' Eyes Only" shall be treated in the manner as documents designated "Confidential." To the extent the non-Producing Party disagrees with any such designation, it shall follow the procedure set forth in Paragraph VI.10.

10.      In the event that the Receiving Party disagrees with the designation by the Producing Party of any document or discovery materials as "CONFIDENTIAL," the requesting party's counsel shall first contact the party making such designation or classification and describe with particularity the documents or information in question. The Parties shall meet and confer in good faith in an effort to resolve the dispute. If the Parties are unable to resolve the dispute, the Party asserting the confidentiality designation may apply to the Court, by motion or otherwise, for an appropriate order regarding the treatment of such materials. Any filing with the Court containing the Confidential Information shall not be filed electronically. The receiving party shall maintain the confidentiality of the disputed materials for 14 days following the date of the parties' meet and confer to allow the disclosing party to move the Court for an Order regarding the treatment of such materials. In the event a motion is made, the receiving party shall continue to maintain the confidentiality of the disputed materials until the disposition of the motion. If no motion is made within 14 days following the date of the parties' meet and confer, the receiving

party may treat the documents and information in question as if it was not designated "Confidential."

11.     Documents produced in this case shall be used by the Receiving Party for the sole purpose of the Litigations and any appeal or confirmation of a litigation award and shall not be disclosed or divulged in any other proceeding before any other court, arbitrator, litigation Court or agency, except as expressly ordered by a court, arbitrator, litigation Court or agency of competent jurisdiction or as agreed to in writing by the producing Party.  In the event a Party is served with a subpoena or other legal process seeking production of Confidential Information produced by the opposing Party, the served Party shall promptly notify in writing the producing Party of the service of subpoena or other legal process.  The Party served with a subpoena or other legal process shall take reasonable efforts to allow time for the Producing Party to respond to the subpoena or other legal process before disclosing Confidential Information, except that nothing in this Agreement shall prohibit the Receiving Party from complying with its legal obligations pursuant to such subpoena or other legal process.

12.     At the time that any consultant, expert, or other person retained to assist counsel in this action concludes his or her participation in this action, such person shall return to counsel all copies of Confidential Information that are in the possession of such person, together with notes, memoranda, or other papers reproducing, paraphrasing or otherwise disclosing Confidential Information, or certify as to their destruction.

13.     Within thirty (30) days after final disposition of this litigation, whether by judgment, settlement or otherwise, unless the Parties in writing agree otherwise, counsel for the Receiving Party shall collect all copies of Confidential Information (including any writing or communication reproducing, paraphrasing, or otherwise disclosing such Confidential Information), and either destroy said materials or return them to the Party or non-party who produced, provided, or filed the Confidential Information.  However, attorney work product or pleadings reproducing, paraphrasing, or otherwise disclosing Confidential Information may be retained in counsel's files subject to the other provisions of this Agreement, provided that such Confidential Information shall not be used for any purpose outside of those permitted by this Agreement.  Finally, any Confidential Information remaining in counsel's files shall not be released, disclosed, or utilized except upon express written permission of the Producing Party or upon an Agreement of a court, arbitrator, litigation Court or agency of proper jurisdiction secured after timely written notice to counsel for the Party that produced the Confidential Information.

14.     The provisions of this Exhibit shall survive the final termination of the Litigations except to the extent that the information contained in Confidential Information is or becomes known to the public not due to any unauthorized act or omission by either of the Parties.

## VI.    Privilege Log

1.     Unless otherwise agreed, you shall provide a privilege log for documents withheld from production within thirty (30) days after making your final production of documents.  The privilege log should comply with the applicable court rules (including Guideline 10 of the Discovery Guidelines of the U.S. District Court for the District of Maryland) and provide sufficient information to enable other parties to assess the applicability of the privilege or protection.  The

privilege log shall, at a minimum, include those fields and metadata that can be generated and exported to a spreadsheet including the following fields (to the extent such metadata exists):

      a.     BEGBATES
      b.     ENDBATES
      c.     BEGATTACH
      d.     ENDATTACH
      e.     ATTACHMCOUNT
      f.     DOCDATE
      g.     AUTHOR
      h.     RECIPIENT
      i.     CC
      j.     BCC
      k.     DOCTYPE
      l.     TITLE
      m.     SUBJECT (subject may be redacted to the extent to it includes privileged, work-product, and/or other privileged and/or protected information)
      n.     CUSTODIAN

2.     The Parties agree that, in good faith, they will not abuse privilege challenges, but will challenge only those privilege log entries that appear not to be privileged.

3.     If a parent document and all attachments are privileged, both the parent and attachments will be withheld from production.  In instances where a portion of the parent document is privileged, the privileged portion of the parent will be redacted and produced along with non-privileged attachments.  If an attachment is privileged entirely but the parent document is not privileged, the attachment will be withheld, and the responsive, non-privileged parent and any other responsive, non-privileged attachments will be produced.  If a portion of an attachment is privileged, the privileged portion of the attachment will be redacted and produced along with the responsive parent and other attachments.  Redacted documents will be described on a privilege log.

4.     Because the relationship between paper documents is artificial, the Parties will make privilege determinations for hard copy documents at the document level.

# EXHIBIT 1

## Metadata Fields

| Field Position | Field name | Sample Description | Field Type | Field Value | E-Mail | Other ESI | Hard Copy |
|---|---|---|---|---|---|---|---|
| 1 | BEGBATES | Start Bates (including prefix) - No spaces | Note Text | 60 | x | x | x |
| 2 | ENDBATES | End Bates (including prefix) - No spaces | Note Text | 60 | x | x | x |
| 3 | BEGATTACH | Start Bates number of first attachment | Note Text | 60 | x | x | x |
| 4 | ENDATTACH | End Bates number of last attachment | Note Text | 60 | x | x | x |
| 5 | PGCOUNT | Page Count | Integer | 10 | x | x | X |
| | | | | | | | |
| 7 | AUTHOR | Author | Note Text | 160 | x | x | |
| 8 | SENDER | Sender | Multi-Entry | Unlimited | x | x | |
| 9 | RECIPIENT | Recipient | Multi-Entry | Unlimited | x | x | |
| 10 | CC | Carbon Copy Recipients - | Multi-Entry | Unlimited | x | x | |
| 11 | BCC | Blind Carbon Copy Recipients | Multi-Entry | Unlimited | x | x | |
| 12 | DOCTYPE | File, E-mail, Attachment, or Hard Copy | Note Text | 60 | x | x | x |
| 13 | TITLE | Document Title | Note Text | Unlimited | x | x | x |
| 14 | SUBJECT | Email Subject | Note Text | Unlimited | x | x | x |
| 15 | MESSAGEHEADER | Email header.  Can contain IP address | Full Text | Unlimited | x | | |
| 16 | CONVINDEX | E-mail system ID used to track replies, forwards, etc. | Note Text | Unlimited | x | | |
| 17 | DATECRTD | Date & Time[1] Created | Date | MM/DD/YYYY HH:MM:SS | x | x | |

---

[1]   All times referenced in this Exhibit A shall refer to the time zone of the custodian and not

| Field Position | Field name | Sample Description | Field Type | Field Value | E-Mail | Other ESI | Hard Copy |
|---|---|---|---|---|---|---|---|
| 18 | DATEMOD | Date & Time Last Modified | Date Keyed | MM/DD/YYYY HH:MM:SS | x | x | |
| 19 | DATESENT | Date & Time Sent | Date | MM/DD/YYYY HH:MM:SS | x | | |
| 19 | DATERCVD | Date & Time Received | Date | MM/DD/YYYY HH:MM:SS | x | | |
| 20 | DATEACCD | Date & Time Accessed | Date | MM/DD/YYYY HH:MM:SS | x | x | |
| 21 | CUSTODIAN | Custodian(s)/Source(s) - format: Last, First or ABC Department | Multi-Entry | Unlimited | x | x | x |
| 22 | FILESIZE | File Size | Note Text | 10 | | x | |
| 23 | FILENAME | File name - name of file as it appeared in its original location | Full Text | Unlimited | | x | |
| 24 | FILEEXTENSION | Extension for the file (*e.g.* *.doc; *.pdf; *.wpd) | Note Text | 10 | x | x | |
| 25 | FILEPATH | Data's original source full folder path | Full Text | Unlimited | x | x | |
| 26 | HASH | Hash value (used for deduplication or other processing) | Note Text | Unlimited | x | x | |
| 27 | NATIVEPATH | Current file path location to the native file | Full Text | Unlimited | x | x | |
| 28 | TEXTPATH | Current file path location to the native file | Full Text | Unlimited | x | x | |
| 29 | COMMENTS | Identifies whether the document has comments associated with it | Note Text | 10 | x | x | |
| 30 | PARENTDATE | Date & Time Sent of Parent Email/Date and Time Modified of Parent Document [include on parent] | Date Keyed | MM/DD/YYYY HH:MM:SS | x | x | |

the time zone used during processing.

| Field Position | Field name | Sample Description | Field Type | Field Value | E-Mail | Other ESI | Hard Copy |
|---|---|---|---|---|---|---|---|
| 31 | REDACTED | Identifies whether the document has been redacted. | | | | | |
| 32 | CONFIDENTIALITY | Identifies whether the document has been labeled as "Confidential." | | | | | |

A-3

## EXHIBIT 2

### ENDORSEMENT TO INSTRUCTIONS ON
### ELECTRONIC AND HARDCOPY DOCUMENT DISCOVERY

I HEREBY CERTIFY that I have been provided with a copy of the Instructions on Electronic and Hardcopy Document Discovery (the "Instructions") in the subpoena *duces tecum* to the Maryland Department of Public Safety and Correctional Services in *Canter v. Ziegler, et al.*, 17-cv-908(GJH) (D. Md.), and I agree to be bound by the terms of those Instructions.

Date:_____        Signed: _____

                                        Name (Print): _____

                                        Title: _____

                                        Company: _____

**EXHIBIT B**

**Search Parameters for Electronically Stored Information**

**PART 1:  Search for electronically stored information, including emails, for the following custodians:**

1. Dr. Sharon Baucom

2. Mahmood Ashraf

3. Lauren Beitzel

4. Jeffrey Nines, Assistant Warden of North Branch Correctional Institution ("NBCI")

5. Richard Graham, Warden of Western Correctional Institution ("WCI")

6. Ronald Weber, Acting Warden at WCI

7. Dorothy Bittinger, Case Manager at WCI

8. Officer Faust of WCI

9. Officer Thompson of WCI

10. Officer Barnes of WCI

11. Brenda Reese, Former Medical Director of WCI

12. Randall Nero, Director of Mental Health of the Maryland Department of Public Safety and Correctional Services ("DPSCS")

13. Harry Murphy, Western Region Mental Health Director of DPSCS

14. Mark Forrest

15. Bruce Liller, Mental Health Program Manager at NBCI

16. Dr. Maksed Choudry

17. Kristina Donnelly

18. Lt. Bradley Wilt, Correction Officer at NBCI, Housing Unit #1 Manager

19. Charlotte Zies, Case Management Specialist

20. Richard Roderick

21.   Bryan Hoffman

22.   Det. Sgt. William Justice

23.   T. Allan Graham

24.   Krista Bilak, Member of Regional Gender Dysphoria Committee

25.   William Beeman, Member of Regional Gender Dysphoria Committee

26.   Frank Bishop, Warden at NBCI and Member of Regional Gender
      Dysphoria Committee

27.   Sgt. Greg Forney, Member of Regional Gender Dysphoria Committee

28.   Donnell VanSkiver, Member of Regional Gender Dysphoria Committee

29.   Dr. Lynda Bonieskie, Member of Regional Gender Dysphoria Committee

30.   Karen Koski-Miller, Member of Regional Gender Dysphoria Committee

31.   Melissa Harr, Member of Regional Gender Dysphoria Committee

32.   Melanie Gordon, Member of Regional Gender Dysphoria Committee

33.   Glenroy Robinson, Member of Regional Gender Dysphoria Committee

34.   Karin Vogel, Member of Regional Gender Dysphoria Committee

35.   Amber Ward, Member of Regional Gender Dysphoria Committee

36.   Oludolapo Kale, Member of Regional Gender Dysphoria Committee

37.   Mulugeta Akal, Member of Regional Gender Dysphoria Committee

38.   Kamala Hall, Member of Regional Gender Dysphoria Committee

39.   Any other current or former members of the Regional Gender Dysphoria
      Committee who are associated with DPSCS

40.   Any other person with knowledge of the events described in the
      Complaint

**PART 2: Search for electronically stored information from the following non-custodial sources:**

1.    Regional Gender Dysphoria Committee

2.    Mental Health Review Team

      3.         NBCI Psychology Department

      4.         WCI Psychology Department

      5.         NBCI Housing Unit #1 Treatment Team

      6.         Any other treatment team, committee, or department involved in Plaintiff's medical or mental health care

**PART 3:  Search ALL of the above custodians and non-custodial sources for ESI with ALL of the following search terms:**

      1.         canter w/3 (amber or maree or charles or "A." or "C.")

      2.         "AC"

      3.         2979873

      4.         00426177 or 426177 or 426-177 or #426177 or #426-177 or 00477384 or 477384 or 477-384 or #477384 or #477-384

      5.         canter and (hormone or patch)

      6.         canter and (spironolactone or aldactone)

      7.         canter and (estrogen or estradiol or estrace or progynova or climara)

      8.         canter w/50 (medical or mental or health or medication or dispense or clinic or hospital or presribe or prescription or diagnose or diagnosis or treatment or welfare or evaluat! or pain)

      9.         canter and (castrate or castration or orchiectomy or bottom or surgery or testicle or (gender w/3 reassign!))

      10.      canter and (homo! or gay or tranny or transgender or "trans" or sex! or orientation or boyfriend)

      11.      canter and ("GD" or (gender w/2 dysphoria) or (gender w/2 identity))

      12.      canter w/50 (lie or lies or lying or liar or fake or false or threat or escape or concoct or ruse or manipulat!)

      13.      canter w/50 (transfer or segregat! or disiplin! or investigat! or complain!)

      14.      canter w/30 (suicide or assault or attack or injur! or harass! or kill! or enemy or enemies)

      15.      kraft w/3 ("Dr." or Chris or Christopher)

16.   canter and cooper

17.   canter w/30 (conscience or biological or god or reckoning or animal)

18.   (freeze w/2 frame) or "freeze-frame" or freezeframe

19.   "gender dysphoria committee" or "GD Committee"

20.   Transgender and (polic! or cover! or treat! or investigat! or complain! or complain! or hous! or Corizon or hormone)