**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| AMBER MAREE CANTER, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Case No. 17-cv-0908 (GJH) |
| J. MICHAEL ZEIGLER, *et al.*, | * | |
| | * | |
| Defendants. | * | |

## <u>STATUS REPORT REGARDING DISCOVERY[1]</u>

On April 20, 2022, the Court held a telephone conference with counsel for Plaintiff, the individual Defendants herein, and non-party the Department of Public Safety and Correctional Services ("DPSCS") (the Defendants and DPSCS have been identified by the Court and will be sometimes referred to herein collectively as the "State"). Following that conference, the Court ordered the State to produce "the outstanding discovery responses to the subpoena referenced in the April 8, 2022, Joint Status Report (ECF No. 177) ["First Status Report"], as well as its outstanding and overdue responses to Plaintiff's written discovery requests, by **May 20, 2022**." (ECF No. 179). The Court further stated:

> Because Plaintiff's concerns [regarding the failure of discovery] are warranted, the Court warns the State that failure to comply with this Order compelling the production of discovery by May 20, 2022, will result in serious sanctions. Specifically, if the state fails to comply with this Order, the Court intends to recommend that Judge Hazel enter **default judgment** as to liability against the State Defendants, pursuant to Rule 37 and the inherent authority of the Court.

---

[1] The instant status report was drafted by Plaintiff's counsel. Counsel for Defendants and DPSCS included the text in blue.

(ECF No. 179)  The State failed to comply with that Order. [2]

On June 23, 2022, the Court held a second conference with counsel. Following that conference, the Court  ordered counsel for the Plaintiff and the State to "meet and confer . . . to discuss discovery deficiencies summarized in Plaintiff's status report dated May 27, 2022 (ECF No. 182) as well as other disputes that have arisen since that report was filed" and "file a joint status report by July 14, 2022." (ECF No. 185). Counsel for the Plaintiff and the State met and conferred on July 12, 2022, and now report to the Court.

As described in more detail below, critical aspects of the discovery served by Plaintiff remains outstanding, despite all the prior Court orders and warnings regarding sanctions. Clearly, the Defendants and DPSCS have not invested the resources necessary to comply with their discovery obligations as critical information and documents have not yet been produced. Plaintiff files this status report as to the most critical discovery failures that remain outstanding in order to demonstrate to the Court that the Defendants and DPSCS have not complied with their discovery obligations.

## A.    THE DPSCS SUBPOENA

On October 20, 2021, Plaintiff served a subpoena *duces tecum* (the "Subpoena") on the Custodian of Records of DPSCS, seeking documents relevant to her claims.[3] A copy of the subpoena is attached to the Status Report as ECF 182-1. Following DPSCS's failure to produce *any* responsive documents, the parties resolved the dispute pursuant to a Stipulation that was later entered as an order of the Court on December 17, 2021 (ECF No. 153). Pursuant to that

---

[2] The State Defendants vigorously disagree with the Plaintiff's statement because responsive documents were sent on May 19, 2022.  State Defendants will further amplify their disagreement below as to Plaintiff's various claims.

[3] DPSCS objected to eight (8) of the 26 categories of documents, and then moved to quash only six (6) of those eight (8) categories (ECF No. 141). Notably, DPSCS waived its objections to Plaintiff's subpoena by failing to timely respond. Plaintiff opposed the Motion to Quash (ECF 143), and the Court denied DPSCS's Motion to Quash on March 31, 2022 (ECF No. 174).

Order, DPSCS was to **complete** its production by **December 22, 2021**.

On February 16, 2022, the Court held a discovery conference due to the failure to abide by the Court's Order (ECF No. 153). The Court stated that the Motion to Show Cause and for Sanctions would be held open for an additional (3) weeks, DPSCS was directed to file a status report at the end of that period, after which time the Court would assess whether sanctions were appropriate. In its Status Report filed March 9, 2022, DPSCS acknowledged that it had not yet produced ESI for the requested custodians, as agreed, and merely indicated its "goal" to produce documents as "quickly as possible." ECF No. 168.

This case was referred to your Honor on April 1, 2022.  (ECF No. 175)  On April 8, 2022, the parties filed a Joint Status Report (ECF No. 177) regarding the discovery that had not yet been produced.  During a status conference on April 20, 2022 and the order issued thereafter, DPSCS was ordered to produce documents responsive to the subpoena **and all overdue discovery responses** by May 20, 2022 (ECF No. 179).  The Court's April 20, 2022 Order stated:

> Because Plaintiff's concerns [regarding the failure of discovery] are warranted, the Court warns the State that failure to comply with this Order compelling the production of discovery by May 20, 2022, will result in serious sanctions.  Specifically, if the state fails to comply with this Order, the Court intends to recommend that Judge Hazel enter **default judgment** as to liability against the State Defendants, pursuant to Rule 37 and the inherent authority of the Court.

(ECF No. 179) The Court ordered a further status report on May 27, 2022 indicating whether the State produced the outstanding discovery.  On May 27, 2022, Plaintiff filed a status report outlining the failures of discovery existing as of that date.  (ECF No. 182)  In the status report filed by Defendants and DPSCS, counsel acknowledged that not all documents and information had been produced and that no privilege log had been provided.

Counsel for Plaintiff and counsel for DPSCS and Defendants met and conferred concerning discovery currently known to be outstanding on July 12, 2022 (the "Meet and Confer"). Counsel for Plaintiff prepared for that Meet and Confer by sending counsel for Defendants and DPSCS a detailed list of then outstanding discovery. During the Meet and Confer, counsel for Defendants and DPSCS admitted that discovery remained outstanding and [4]that certain answers to interrogatories are deficient. This status report summarizes the areas where Defendants and DPSCS have not complied with their discovery obligations, despite prior court orders.

There can be no dispute that DPSCS' responses to discovery remain incomplete. In accordance with this Court's June 23, 2022 Order, Plaintiff is aware of the discovery failures described below. Plaintiff reserves the right to raise additional deficiencies in the future as the review of documents produced continues. Of Plaintiff's 26 document requests, DPSCS failed to produce documents responsive to the following requests:

1.  **Request No. 4**: All minutes of the Mental Health Committee during the Relevant Time Period.

    a.  DPSCS has not produced meeting minutes from the Mental Health Committee. DPSCS did not object to producing these documents. During the Meet and Confer, however, counsel for DPSCS stated they have been unable to locate any such minutes, suggesting the Committee may have a different name. Counsel agreed to investigate further.

2.  **Request No. 14**: Documents sufficient to show whether gender-affirming surgery, including orchiectomy (i.e., bottom surgery), is a covered procedure under your contracts with Corizon or any other medical care provider.

    a.  DPSCS never objected to this request and purportedly produced documents related to its relationship with Corizon. However, Plaintiff is unable to determine whether the production was sufficient, as they are not able to be viewed. DPSCS produced a number of documents with image

---

[4] The State Defendants did not agree that the answers to the interrogatories are deficient. The State Defendants said that they will review, amend and supplement as necessary.

placeholders and not the native zip files, including documents containing "Corizon" in the title. On May 12, 2022, counsel for Plaintiff notified DPSCS of this deficiency, and provided a sample document, and a list of zip files at issue. *See* ECF No. 182-2.  While DPSCS attempted to provide replacement zip files on June 23, 2022, DPSCS failed to provide the metadata necessary to match each replacement file with its original family, which prevents processing of these documents or analysis to determine whether the production is complete. Counsel for Plaintiff requested another production of necessary metadata on July 6, 2022.

    b. During the Meet and Confer, counsel for DPSCS agreed to work with its eDiscovery vendor to find a solution to this issue.

3.    **Request No. 19**: All documents responsive to Plaintiff's list of search terms as applied to the list of identified custodians and non-custodial sources.

    a. DPSCS produced ESI from Richard Graham (a named Defendant and WCI Warden). However, the ESI load file for the numerous documents was missing the ProdBeg and ProdEnd metadata fields and BegAttach and EndAttach metadata fields are incorrect. A corrected load file is required to process these documents for review. During the Meet and Confer, counsel for DPSCS agreed to re-produce the Richard Graham ESI with a corrected load file.

    b. On May 27, 2022, DPSCS produced ESI from Charlotte Zies (Case Management Specialist), but with an incomplete ESI load file, such that more than two thirds of the documents could not be properly processed for review. Counsel for Plaintiff requested a corrected load file on June 21, 2022, and DPSCS re-produced the ESI on June 21, 2022.  Counsel for Plaintiff are investigating whether the re-produced ESI fixed this issue.

    c. DPSCS failed to produce ESI from agreed-upon custodian Brenda Reese (Former Medical Director of WCI) During the Meet and Confer, counsel for DPSCS claimed Brenda Reese was an employee of Corizon, and not DPSCS, but stated that she may have had a DPSCS email address that can be searched. Counsel for DPSCS agreed to provide additional information about Reese's emails by the end of the day on July 12, 2022. As of 12:30 p.m. on July 13, 2022, no such information has been provided to counsel for Plaintiff.

    d. DPSCS failed to produce ESI from agreed-upon custodian Kamala Hall (Member of the Regional Dysphoria Committee). During the Meet and Confer, counsel for DPSCS agreed to produce Hall's ESI by the end of the day on July 12, 2022. As of 12:30 p.m. on July 13, 2022, Hall's ESI has not been produced.

e. The Subpoena additionally required DPSCS to: (i) identify certain custodians, including people with knowledge of the events described in the Complaint and any other DPSCS member of the Gender Dysphoria Committee, not already on the list of named custodians; then (ii) run agreed upon search terms to collect and produce ESI from these additional custodians. DPSCS has failed to take the first step of identifying any such people.

During the Meet and Confer, counsel for DPSCS agreed to investigate further and identify any additional custodians responsive to this request. DPSCS noted that some Gender Dysphoria Committee members were named in answers to interrogatories; however, they were not identified with the specificity required by Plaintiff's instructions (to which DPSCS did not object). *See*, *e.g.,* June 16, 2022 Deficiency Letter regarding Harry Murphy's response to interrogatories, attached as **Exhibit A** at interrogatory no. 2.

f. The Subpoena also required DPSCS to search for, and produce records from, non-custodial sources, including documents from the Regional Gender Dysphoria Committee, the Mental Health Review Team, the NBCI and WCI Psychology Departments, the NBCI Housing Unit #1 Treatment Team, as well as the records of any other treatment team, committee or department involved in Plaintiff's medical or mental health care. During the Meet and Confer, counsel for DPSCS asserted that the agreed-upon search terms had been run on DPSCS' server, and that the resulting documents had been produced on March 25, 2022. However, these documents were produced without Bates numbers. Counsel for DPSCS agreed to re-produce the documents with Bates numbers. Counsel for DPSCS also agreed to investigate and, if found, produce quarterly audits prepared by the Gender Dysphoria Committee and individualized treatment plans for Plaintiff, which are documents required to be kept according to DPSCS' Gender Dysphoria Policy.

4. **Request No. 25**: All documents relating or referring to any Internal Investigations Unit investigation relating to Amber Canter.

a. While DPSCS initially objected to this request, it indicated it would produce responsive documents only from January 1, 2016 – Present. However, DPSCS' Motion to Quash was denied (ECF No. 174), and the applicable time period provided in the Subpoena was April 1, 2014 through the date of service.

b. On May 27, 2022, DPSCS produced Ms. Canter's "CTS Prior Case History" and "RMS Person Record" as of December 10, 2021. However, these documents only list cases. None of the investigative files underlying these cases were produced.

        c.    During the Meet and Confer, counsel for DPSCS acknowledged these documents had not been produced. Counsel asserted these documents will be produced by July 15, 2022.

5.      **Request No. 26**: All documents relating or referring to any Internal Investigations Unit investigation involving any Defendant in this Action.

        a.    While DPSCS initially objected to this request, it indicated it would produce responsive documents only from January 1, 2016 – Present. However, DPSCS' Motion to Quash was denied (ECF No. 174), and the applicable time period provided in the Subpoena was April 1, 2014 through the date of service. *See* Ex. A, Instructions ¶ 15. Regardless, DPSCS has failed to produce

        b.    On May 27, 2022, DPSCS produced "CTS Prior Case History" and/or "RMS Person Record" as of December 10, 2021 for: Faust, Frederick; Forney, Gregory; Liller, Bruce; and Murphy, Harry. However, these documents only list cases. DPSCS acknowledged that none of the investigative files underlying these cases were produced.

        c.    During the Meet and Confer, counsel for DPSCS asserted these documents will be produced by July 15, 2022.

## B.    PLAINTIFF'S INTERROGATORIES

On April 20, 2022, the Court ordered Defendants to produce outstanding discovery responses by May 20, 2022 or face sanctions. (ECF No. 179) Defendants have not complied with that Order. Defendants' responses to Plaintiff's interrogatories remain outstanding. Some have not been received at all. The rest are not merely deficient; rather, they completely fail to provide even basic responsive information. The Defendants clearly made no attempt to refresh their recollection before responding to the interrogatories, instead claiming not to recall even basic facts. Of course, pursuant to Rule 26(g), by signing discovery responses, an attorney and the party is certifying that the answer is complete and correct, "*after a reasonable inquiry*." Fed. R. Civ. P. 26(g)(1).[5] The rule requires that attorneys make a

---

[5] None of the answers to interrogatories were signed by counsel as of July 12, 2022. During the meet and confer, Counsel for Defendants committed to providing signed copies by the end of the week.

7

reasonable inquiry to ensure that discovery responses are correct, which duty is satisfied by if

counsel conducts a reasonable investigation. *Mancia v. Mayflower Textile Servs. Co*., 253

F.R.D. 354, 357 (D. Md. 2008). Defendants' counsel should not be permitted to evade this duty

by not signing the answers. The minimal answers provided in this case clearly demonstrate that

no investigation was conducted here.  Defendants' responses to Plaintiff's interrogatories also

do not comply with the Federal Rules of Civil Procedure and lodge baseless objections which

have been waived by Defendants' failure to timely respond.

1. **Sharon Baucom:**

    a. On February 22, 2022, Plaintiff served the First Set of Interrogatories on Sharon Baucom. Defendant Baucom served her response on March 25, 2022, which was replete with deficiencies. As a result of these deficiencies, Plaintiff served a detailed deficiency letter on March 28, 2022, requesting a response by April 6, 2022. A copy of this letter is available at ECF. No. 182-4. As of July 12, 2022, Plaintiff had not received a response.

    b. During the Meet and Confer, counsel for Baucom committed to responding to Plaintiff's deficiency letter, but did not provide a date by which they will respond. Furthermore, counsel for Baucom ***could not confirm that Baucom had ever reviewed the complaint*** (or otherwise refreshed her recollection as to the claims and defenses) before serving her responses to interrogatories and claiming not to have a recollection as to basic facts. Counsel for Baucom agreed to have an additional call with Baucom and potentially amend certain responses. Counsel for Baucom also agreed to sign Baucom's interrogatory responses by July 15, 2022.

2. **Lauren Beitzel:**

    a. On February 9, 2022, Plaintiff served the First Set of Interrogatories on Lauren Beitzel. Forty-four days later, Defendant Beitzel served her response, which was replete with deficiencies. For example, Defendant Beitzel provided a blank and incomplete answer to Interrogatory Number 11, which requested that she state the factual basis for each and every defense asserted in her Answer. As a result of these deficiencies, Plaintiff served a detailed deficiency letter on April 12, 2022. A copy of this letter is available at ECF 182-5. As of July 12, 2022, Plaintiff had not received a response.

b.   During the Meet and Confer, counsel for Beitzel committed to responding to Plaintiff's deficiency letter, but did not provide a date by which they will respond. Furthermore, ***counsel for Beitzel could not confirm that Beitzel had ever reviewed the complaint*** (or otherwise refreshed her recollection as to the claims and defenses) before serving her responses to interrogatories and claiming instead not to have a recollection as to basic facts. (Defendant Beitzel's response to Plaintiff's interrogatory seeking the identification of persons with personal knowledge of claims and defenses was evasive and verbatim identical that of Defendant Baucom.) Counsel for Beitzel agreed to confer with Beitzel and potentially amend certain responses. Counsel for Baucom also agreed to sign Baucom's interrogatory responses by July 15, 2022.

3.   **Bruce Liller:**

a.   On February 10, 2022, Plaintiff served the First Set of Interrogatories on Bruce Liller. One hundred and six days later, on May 27, 2022, Defendant Liller served his response, which was replete with deficiencies.

b.   In a working document provided to counsel for Liller in advance of the Meet and Confer, Plaintiff identified deficiencies in the following short form:

   i.   Not signed by counsel
   ii.   Interrogatory #1 – Failure to properly "identify" individuals per instructions.[6]
   iii.   Interrogatory #2 – Failure to properly "identify" listed individuals on the Gender Dysphoria Committee; need definition of the term "search card"; confirm Liller does not recall specific communications regarding Plaintiff, only general discussions by the Committee.
   iv.   Interrogatory #5 – Confirm Liller is unaware of any documents or things relevant to his own defenses in the Action

---

[6] The response to this interrogatory is particularly problematic as the deficiency is the same in every single answer to interrogatory provided by the Defendants. Specifically, Interrogatory No. 1 was a standard interrogatory requesting that each Defendant "Identify all persons who are likely to have personal knowledge of any fact alleged in the Complaint or in your answer to the Complaint, and state the subject matter of the personal knowledge possessed by each such person." The answer provided by Liller is the same answer provided by other the Defendants:

> Defendant objects to this interrogatory for [sic] the basis that it calls for speculation. Additionally, no time frame is provided by Plaintiff within which to identify those persons. Without waiving the objection, Defendant supposes that any person named in the complaint, any medical provider that treated Plaintiff over the course of her various incarcerations may have personal information. Otherwise, Defendant is unaware of any specific person having personal knowledge of any party's claims or defenses.

It is simply not true that no timeframe was provided. In addition, the interrogatory is a standard one and therefore presumptively proper.

     v.    Interrogatory #7 – Failure to properly "identify" Dr. Bonieskie per instructions.

    vi.    Interrogatory #9 – Confirm whether Counsel used documents to attempt to refresh Liller's recollection. If not, we request such an attempt.

   vii.    Interrogatory #10 – Confirm whether Counsel used documents to attempt to refresh Liller's recollection. If not, we request such an attempt.

  viii.    Interrogatory #12 – Confirm Liller's statement, "Defendant is supervised by Lynda Bonieskie," is an error (because Liller is retired from DPSCS); failure to properly "identify" Bonieskie per instructions; confirm date Liller's supervisor changed from Nero to Bonieskie.

    ix.    Interrogatory #13 – Response provides no answer; this is a standard interrogatory, not a "contention" interrogatory; entitled to know factual basis of defenses asserted

    x.    Interrogatory #14 – Responses re: paragraphs 75, 77, 80 of SAC – merely states "Defendant does not have enough information from the allegation to admit or deny, so Defendant denies this allegation." Allegations provide sufficient information to say, e.g., "I don't recall"; but this is a complete non-answer.

    c.    During the Meet and Confer, counsel for Liller requested a formal deficiency letter concerning the above points, to which counsel for Plaintiff agreed. Counsel for Liller committed to responding to Plaintiff's deficiency letter. Furthermore, counsel for Liller could not confirm that Liller had reviewed the complaint (or otherwise refreshed his recollection as to the claims and defenses) before serving his responses to interrogatories, claiming instead not to have a recollection as to basic facts. Counsel for Liller also agreed to sign his interrogatory responses by July 15, 2022.

4.    **C.O. Thompson:**

    a.    On February 9, 2022, Plaintiff served the First Set of Interrogatories on C.O. Thompson. Defendant Thompson has failed to respond and these interrogatories.

    b.    On May 27, 2022 counsel for Defendant acknowledged not knowing who this person is, despite filing an answer on their behalf.

    c.    During the Meet and Confer, counsel for Defendants asserted that Thompson has now been identified and interrogatory responses will be provided. However, counsel did not provide a date as to when that would happen.

5.  **Harry Murphy:**

    a.  On February 10, 2022, Plaintiff served the First Set of Interrogatories on Harry Murphy. Defendant Murphy served his untimely responses and objections on March 25, 2022. Because the response was untimely any objections that Defendant Murphy might have had were waived. Moreover, the responses unsigned by counsel and, therefore, were noncompliant with Federal Rule of Civil Procedure 33(b)(5), which requires that "the attorney who objects must sign any objections." This issue was raised to the State's counsel's attention, but it had not been addressed.

    b.  On June 14, 2022, counsel for Plaintiff served a letter on counsel for Murphy regarding numerous deficiencies in the interrogatory responses, and requesting they be corrected by 3:00 pm on June 22, 2022. A copy of this letter is attached as **Exhibit A**. No response or correction had been received as of 12:30 p.m. on July 12, 2022.

    c.  During the Meet and Confer, counsel for Murphy committed to responding to Plaintiff's deficiency letter, but did not provide a date by which they will respond. Furthermore, counsel for Murphy could not confirm that Murphy had reviewed the complaint (or otherwise refreshed his recollection as to the claims and defenses) before serving his responses to interrogatories and claiming not to have a recollection as to basic facts. Counsel for Murphy also agreed to sign Murphy's interrogatory responses by July 15, 2022.

6.  **Randall Nero:**

    a.  On February 10, 2022, Plaintiff served the First Set of Interrogatories on Randall Nero. Defendant Nero served his untimely responses and objections on April 7, 2022. Because the response was untimely any objections were waived. Moreover, the responses were not signed by counsel and, therefore, noncompliant with Federal Rule of Civil Procedure 33(b)(5), which requires that "the attorney who objects must sign any objections." This issue was raised to the State's counsel's attention, but it has not been addressed.

    b.  On July 5, 2022, counsel for Plaintiff sent a letter to counsel for Nero regarding numerous deficiencies in the interrogatory responses, and requesting they be corrected by 3:00 pm by July 12, 2022. A copy of this letter is attached as **<u>Exhibit B</u>**. No response or correction had been received as of July 12, 2022.

    c.  During the Meet and Confer, counsel for Nero committed to responding to Plaintiff's deficiency letter, but did not provide a date by which they

will respond. Counsel stated that they do not intend to ask Nero to supplement his responses. Furthermore, counsel for Nero could not confirm that Nero had reviewed the complaint (or otherwise refreshed his recollection as to the claims and defenses) before serving his responses to interrogatories and claiming not to have a recollection as to basic facts. Counsel for Nero also agreed to sign Nero's interrogatory responses by July 15, 2022.

7.   **J. Michael Zeigler:**

   a.   On February 10, 2022, Plaintiff served the First Set of Interrogatories on J. Michael Ziegler. Defendant Ziegler served his untimely responses and objections on April 5, 2022. Because the response was untimely, any objections were waived. Moreover,, the responses unsigned and, therefore, were noncompliant with Federal Rule of Civil Procedure 33(b)(5), which requires that "the attorney who objects must sign any objections." This issue was raised to the State's counsel's attention, but it has not been addressed.

   b.   On July 6, 2022, counsel for Plaintiff sent a letter to counsel for Nero regarding numerous deficiencies in the interrogatory responses. A copy of this letter is attached as **Exhibit C**. No response or correction had been received as of July 12, 2022.

   c.   During the Meet and Confer, counsel for Zeigler committed to responding to Plaintiff's deficiency letter, but did not provide a date by which they will respond. Furthermore, counsel for Zeigler could not confirm that Zeigler had reviewed the complaint (or otherwise refreshed his recollection as to the claims and defenses) before serving his responses to interrogatories and claiming not to have a recollection as to basic facts. Counsel for Zeigler also agreed to sign Zeigler's interrogatory responses by July 15, 2022.

8.   **Richard Graham:**

   a.   On February 9, 2022, Plaintiff served the First Set of Interrogatories on Richard Graham. Defendant Graham served his untimely responses and objections on May 19, 2022 (99 days later). Because the response was untimely, any objections were waived. The responses were noncompliant with Federal Rule of Civil Procedure 33(b)(5), which requires that "the attorney who objects must sign any objections." Additionally, Defendant Graham provided deficient answers in response to Plaintiff's interrogatories.

   b.   On July 6, 2022, counsel for Plaintiff sent a letter to counsel for Graham regarding numerous deficiencies in the interrogatory responses. A copy

of this letter is attached as **Exhibit D**. No response or correction had been received as of July 12, 2022.

c.  During the Meet and Confer, counsel for Graham committed to responding to Plaintiff's deficiency letter, but did not provide a date by which they will respond. Furthermore, counsel for Graham could not confirm that Graham had reviewed the complaint (or otherwise refreshed his recollection as to the claims and defenses) before serving his responses to interrogatories and claiming instead not to have a recollection as to basic facts. Counsel for Graham also agreed to sign Graham's interrogatory responses by July 15, 2022.

## C.     PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS

During the Meet and Confer, counsel for Defendants agreed to clarify all responses to requests for production as to what documents will be produced; and what documents have already been produced, and when, and identifying such documents (*e.g.*, by Bates range) as the current written responses do not indicate whether the Defendants are producing documents and whether they have been produced.  However, counsel did not provide a date by which such clarifications will be made.

During the Meet and Confer, the parties discussed the fact that even a cursory review of the written responses indicates glaring deficiencies.  A couple of examples demonstrate the point.  In Dr. Baucom's written responses, attached hereto as **Exhibit E**, in response to Plaintiff's request that she produce training records (Request No. 4), Dr. Baucom's response was to see "response number 2."  But, the response to Request No. 2 (which sought relevant policies), only identified three policies that would be produced, and no records relating to training. Counsel for Dr. Baucom did not know whether training records had been gathered and produced. In response to Request No. 12, which sought documents relating to complaints and investigations against Dr. Baucom, counsel responded that "Defendant is not aware of any responsive documents."  However, a simple PACER search shows many complaints filed against Dr.

Baucom. Dr. Baucom was and is represented in most of those actions by the Maryland Office of the Attorney General. Counsel for Dr. Baucom stated that they had simply asked Dr. Baucom about complaints and she claimed she did not remember any complaints or investigations. No independent investigation or search for responsive documents was conducted.

1. **Correctional Officer Barnes:**

   a. On February 22, 2022 Plaintiff served her Request for Production of Documents on Correctional Officer Barnes. To date, Defendant Barnes has failed to provide a written response.

   b. On May 27, 2022, counsel for Defendant admitted not knowing who this person is, despite filing an Answer on their behalf.

   c. During the Meet and Confer, counsel for Barnes stated they have identified Barnes, and responses to requests for production of documents will be provided. However, counsel did not provide a deadline.

2. **J. Michael Ziegler:**

   a. On February 22, 2022 Plaintiff served her Request for Production of Documents on J. Michael Ziegler. To date, Defendant Ziegler has failed to provide a written response.

   b. During the Meet and Confer, counsel for Zeigler indicated his responses had been served on May 27, 2022, but counsel for Plaintiff demonstrated they had not been served. Counsel agreed to re-serve the responses on July 12, 2022, but, as of 12:30 p.m. on July 13, 2022, this was not done.

3. **Correctional Officer Thompson:**

   a. On February 22, 2022, Plaintiff served her Request for Production of Documents on Correctional Officer Thompson. To date, Defendant Thompson has failed to provide a written response.

   b. On May 27, 2022, counsel for Thompson admitted not knowing who this person is, despite filing an Answer on their behalf.

   c. During the Meet and Confer, counsel for Thompson stated they have identified Thompson, and responses to requests for production of documents will be provided. However, counsel did not provide a deadline.

**D.  PRIVILEGE LOG PRODUCED BY DEFENDANTS AND DPSCS**

On June 22, 2022, the State Defendants produced an Excel document containing 904 entries, which they titled "Canter Final Privilege Log.csv." The document is incomplete, nonsensical and fails to provide the information required by the ESI Order, the Local Rules, and the Federal Rules of Civil Procedure.  As an initial matter, of the 904 entries, 884 are identified under the "PrivilegeCode" (Column R) as Attorney-Client and 20 entries are blank.  The log fails to identify a description of the Attorney-Client privilege.  This is particularly important because it appears that a substantial number of documents are clearly not subject to the attorney-client privilege. For example, 573 of the 904 entries do not include anyone from the Office of Attorney General on the correspondence.

In addition, a number of entries that do contain an attorney on the correspondence include third-party senders or recipients, such that there is no privilege. For example, at least 83 entries include correspondence with Corizon or Wexford employees. Absent a sufficient explanation for the withholding, these documents need to be removed from the privilege log and produced immediately.

ESI Order (ECF No. 166), provides that the privilege log "should comply with the applicable court rules" and "provide sufficient information to enable other parties to assess the applicability of the privilege or protection." Local Rule Guideline 10(b) additionally provides that, "the party from whom disclosure was sought shall, within reasonable promptness, provides sufficient factual information, including by affidavit, to establish the factual basis for each claim of privilege of protection that has been claimed.

It is impossible for Plaintiff to assess the claimed privilege with the information provided by State Defendants. The information on the privilege log is confusing, meaningless, and difficult to decipher. For example, the entries are not in chronological order or in an order where family members are grouped together.  Nor is any information provided to show any family relationship among the privilege log entries or with any produced document. The log contains 174 entries with production bates numbers, but it appears these documents were fully produced and not redacted in any way.  The State Defendants included a column titled "Has Redactions" (Column Q) and "Redaction Reason" (Column S), which they either intentionally or negligently left blank on all 904 entries. The log also contains approximately 298 duplicate document entries (identical BegAttach#s).  At the Meet and Confer, counsel for DPSCS agreed that by July 19, 2022 they will review the documents on the privilege log, produce any non-privileged documents, and produce a revised privilege log.

\*   \*   \*

Subject to the aforementioned deficiencies, Plaintiff continues to review Defendants' productions and discovery responses in order to assess the responsiveness of documents produced to date and the completeness and reliability of the responses.

**State Defendants' Statement:**

Counsel for the State Defendants reiterate that responsive documents were provided on May 19, 2022, pursuant to the Court's Order (ECF 179).

Significantly during the Meet and Confer on July 12, 2022, Plaintiff's counsel acknowledged that they had not finished reviewing *all* of the State Defendants' document productions. As such, the State Defendants believe many of the Plaintiff's assertions are premature.

The State Defendants continue to vigorously work to address the agreed upon the alleged deficiencies as stated by Plaintiff above.

Respectfully submitted,

Dated: July 14, 2022                         */s/ Timothy F. McCormack*
                                             Timothy F. McCormack
                                             Fed. Bar No.: 03565
                                             Michelle M. McGeogh
                                             Fed. Bar No.: 28778
                                             BALLARD SPAHR LLP
                                             300 E. Lombard Street, 18th Floor
                                             Baltimore, Maryland  21202
                                             (410) 528-5600
                                             mccormackt@ballardspahr.com
                                             mcgeoghm@ballardspahr.com

                                             *Attorneys for Plaintiff Amber Maree Canter*

                                             Respectfully submitted,

                                             BRIAN E. FROSH
                                             Attorney General of Maryland

                                             _____/s/_____
                                             DAMON PACE
                                             ARI J. KODECK

Assistant Attorneys General
St. Paul Plaza - 19th Floor
200 St. Paul Place
Baltimore, Maryland 21202
 (410) 576-6300
(410) 576-6880 (Telefax)
Attorneys for State Defendants

## **CERTIFICATE OF SERVICE**

The undersigned hereby declares that on the 14th day of July, 2022, a true and accurate

copy of the foregoing was served via the court's Electronic Case Filing system on:

> Damon Pace, Esq.
> Assistant Attorney General
> St. Paul Plaza – 19th Floor
> 200 St. Paul Place
> Baltimore, Maryland 21202
>
> *Attorney for State Defendants*

> */s/ Timothy F. McCormack*
> Timothy F. McCormack