**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| | * | |
| AMBER MAREE CANTER, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Case No. 17-cv-0908 (GJH) |
| J. MICHAEL ZEIGLER, *et al.*, | * | |
| | * | |
| Defendants. | * | |

**<u>ORDER</u>**

Upon consideration of the letters, motions, and status reports regarding discovery submitted by the parties in this case, the hearings held in this case, and the Court finding that good cause exists, it is, this 22nd day of November, 2022 by the United States District Court for the District of Maryland,

ORDERED that the Department of Public Safety and Correctional Services ("DPSCS"), by December 23, 2022, shall comply with the below requirements for the production of Electronically Stored Information in response to the Subpoena served on October 20, 2021, a copy of which is attached hereto as **<u>Exhibit 1</u>**:

1.      DPSCS shall reproduce <u>all</u> previously produced documents and produce any documents responsive to the Subpoena which were not previously produced but should have been, *e.g.*, contents of .zip files, audio records, documents from custodians DPSCS should have identified, etc. (as discussed in more detail below).[1]

---

[1] To the extent DPSCS has produced any documents on behalf of the individual Defendants, such documents shall also be reproduced consistent with this Order. Plaintiff's understanding is that only DPSCS has produced documents and that any documents responsive to the Requests for Production served on the individual Defendants have been produced by DPSCS (although such

2.      DPSCS shall provide a cross reference file between the re-production Bates Numbers and the Original Bates Numbers in Microsoft Excel. The cross reference file should contain the following fields:

a.      Original Production Bates Number

b.      New Production Bates Number

c.      Original Production Status: Identify document as Previously Produced, Previously Produced w/o Bates Number or Not Previously Produced

d.      File Name

e.      Author (documents)

f.      Email Author (emails)

g.      Original Production Volume Name

h.      New Production Volume Name

i.      Reproduction Correction Description (*e.g.*, missing Bates numbers on images; .zip file not extracted; missing metadata ([specify]) in load file; determined not privileged)

3.      All documents in the new replacement production should be numbered consecutively beginning with "DPSCS_000000001."

4.      In connection with the reproduction of documents, DPSCS shall comply with the ESI Order, entered February 17, 2022, and attached hereto as **Exhibit 2** in all respects, unless DPSCS has obtained Plaintiff's express advance permission to deviate from the ESI Order's specifications.

---

productions remain incomplete).

5.      In the reproduction of documents, parent emails and their attachments, and documents and any embedded files, must be produced together and consecutively Bates Numbered. The Beg Attach and End Attach fields should accurately capture the Family Bates Range, *e.g.*, the Beg Attach field should contain the Bates Number assigned to the first page of the parent email/document and the End Attach field should contain the Bates Number assigned to the last page of the last attachment/embedded file in the family.

6.      The following additional metadata information shall be provided in connection with the reproduction of documents:

a.      Custodian: This field must include the names of **all** Custodians whose email and/or documents included a copy of the email or document being produced.

b.      File Path: This field must include the file path of the email and/or documents being produced for each of the Custodians identified in the Custodian field.

c.      Text Files: All Text Files must be named for the corresponding Bates Number assigned to the first page of the produced document.

d.      Native Files: All Native Files must be named for the corresponding Bates Number assigned to the first page of the produced document.

e.      Image Files: All Image Files should be named for the corresponding Bates Number assigned to each page of each produced document.

7. With regard to the .zip files that Plaintiff's counsel previously identified as being improperly produced: Any .zip file previously produced must be re-produced with a slipsheet stating "Originally Produced as a .zip file" and must be assigned a Bates Number. The contents of the .zip file must be produced together with the parent email or document which contained the .zip file and Bates Numbered consecutively with the parent email or document. The contents of any

.zip files should be identified as "Not Previously Produced" in the Original Production Status field in the cross reference file.

8.      With regard to documents previously produced without Bates Numbers: These documents must be reproduced with Bates Numbers and should include all members of the email or document family, *e.g.*, parent email/attachments or document/embedded files. These documents should be identified as "Previously Produced w/o Bates Number" in the Original Production Status field in the cross reference file.

9.      The reproduction of documents should not contain any overlapping Bates Numbers. All documents included in the new production should be numbered consecutively.

10.      DPSCS shall reproduce, with the metadata required by the ESI Order, each of the documents combined into a 247-page PDF originally produced on March 14, 2022 that did not contain metadata.

11.      DPSCS's production of documents in accordance with this Order shall constitute a full and complete production of all documents sought pursuant to the Subpoena.  As previously demonstrated by Plaintiff, numerous documents sought by the Subpoena have never been produced, including, *inter alia*:

       a.      All minutes of the Mental Health Committee during the Relevant Time Period;

       b.      All documents responsive to Plaintiff's search terms from custodians identified by DPSCS (and not previously identified by Plaintiff) as having knowledge of the events described in the Complaint (*See* Subpoena, Exhibit B, part 1 at ¶ 40);

       c.      Documents from non-custodial sources responsive to the requests, including, but not limited to:

i.      Documents reviewed by or in the possession of the Gender Dysphoria Committee, Mental Health Review Team and NBCI and WCI Psychology Departments;

ii.      Recordings of the Gender Dysphoria Committee Meetings;

iii.      Documents (including notes) in files maintained by Ms. Canter's treating physicians and nurses;

iv.      Documents relating to IIU investigations involving Ms. Canter or any defendant in this action, including, but not limited to, the written findings of those investigations;

v.      Documents sufficient to show the medications and treatments available or not available to transgender individuals;

vi.      All documents referring or relating to any analysis by DPSCS, NBCI, WCI, MCI-J, ECI, RCI, BCCC, or the Internal Investigation Unit within the past ten years of the treatment of transgender inmates, including inmate complaints, and all non-privileged documents referring or relating to any investigations conducted as a result of such analysis, including any investigations by DPSCS, NBCI, WCI, MCI-J, ECI, RCI, BCCC, or the Internal Investigation Unit;

vii.      All documents relating to meetings at which Plaintiff's medical care or the Action were discussed, including agendas, minutes, notes, or presentations;

viii.      All documents referring or relating to the discharge, suspension, or discipline of any agent or employee of DPSCS, NBCI, WCI, MCI-J, ECA, RCI, or BCCC for conduct related to any inmate's sexual orientation or gender identity; and

ix.     All documents pertaining to the taking, storage, or disposition of Plaintiff's personal property, medications, and legal papers, which were removed from her cell at MCI-J upon her transfer to RCI in 2021, and all documents relating to any investigation into Plaintiff's complaint that her legal papers and medications were not returned to her after the transfer.

12.     With regard to the Privilege Log, counsel for DPSCS shall revise the Privilege Log produced June 22, 2022 containing 904 entries, adding a column to the Privilege Log indicating whether (a) each document is now being withheld based on the assertion of the attorney-client privilege or work product doctrine, or (b) whether the document is now being produced.  If documents were previously withheld based on the assertion of the attorney-client privilege or work product doctrine, but are now being produced, the Bates number shall be provided. The Privilege Log shall also contain the information required by the ESI Order and include sufficient information to enable Plaintiff to assess the applicability of the privilege or protection. The entries on the Privilege Log shall contain a reference number, for example, PRIV00001, etc. If a document has been redacted, it shall appear on the Privilege Log with the redacted document's Bates number.

13.     Counsel for DPSCS shall certify under oath that all documents requested by the Subpoena have been produced.


_____
Timothy J. Sullivan
United States Magistrate Judge